[Civ. No. 20448.   Second Dist., Div. One.   Dec. 21, 1954.]

THE PEOPLE, Respondent, v. JOHN J. CALVERT, Defendant; NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY (a Corporation), Appellant.

Joseph T. Forno and Harold J. Ackerman for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and John Powers Wright, Deputy County Counsel, for Respondent.

WHITE, P. J.—An information had been filed against the above named defendant and undertaking of bail in the amount of $10,000 was filed by appellant National Automobile and Casualty Insurance Company, a corporation. When the cause was called for trial on January 15, 1954, the defendant failed to appear. His counsel moved for a continuance and in support of such motion presented an affidavit from defendant's physician, Dr. Joseph Green, dated January 13, 1954, and reading as follows:

"This is to certify that I have examined Mr. John Calvert this afternoon, at his home, and found him to have an incarcerated right direct and indirect inguinal hernia. At the present time, this is not completely strangulated, but is quite tender and cannot be replaced with compression.

"The patient is now confined to bed under heavy sedation, with the foot of the bed elevated, and compresses applied to the incarcerated hernia, in an attempt to replace the hernia into the abdomen. If at the end of one week it does not drop back into the abdomen, and becomes strangulated completely; he will require hospitalization and surgery; and he will be confined for at least one month."

Thereupon, the court made an order that "by reason of the physical condition of the defendant, cause is continued to February 18, 1954 at 9 a. m. for trial."

Later the same day (January 15, 1954) according to the record the trial judge "received information which caused me to doubt the inability of the defendant to be present at the trial." An order was thereupon made "That Doctor Marcus Crahan is appointed by the Court under Section 1871 C.C.P. to visit and examine the defendant as to his physical ability to attend court and report his findings to the Court." At the same time a bench warrant was issued by the court with instructions to the sheriff and Dr. Crahan as follows: "that if the defendant was capable of being transported to the county jail with safety after being taken

into custody with a bench warrant, that that should be done; but that if his physical condition would not permit that the bench warrant should not be served.''

On January 15, 1954, fortified with the foregoing bench warrant and instructions, Dr. Crahan, accompanied by two police officers of the Los Angeles Police Department, went to the home of defendant in the city of Long Beach, arriving there about 3:30 p. m., where they found the defendant in bed attired in bed clothes and lying prone.

Following his examination of defendant, Dr. Crahan reported to the court as follows: ''His alleged incapacity was a partially strangulated right inguinal hernia. He denied other medical complaints. Examination of the area involved revealed a large (4-inch diameter) soft pliable mass in the right inguinal region, relatively non-tender, non-indurated and readily reduced by light manipulation. Strangulation in this type of hernia is highly improbable.

''The defendant was felt to be physically capable of appearing for trial on January 18, 1954, and Sergeants Barrick and Horne of the Los Angeles Police Department were so advised.''

Following the examination, Dr. Crahan offered defendant the services of an ambulance for transportation to the county jail but according to the physician, defendant declined ambulance service and volunteered to go in the police car. It is however noteworthy that on arrival at the county jail Dr. Crahan ordered the usual ''booking'' procedures, which it is asserted, ordinarily consume from five to twelve hours, dispensed with and directed that the defendant be immediately placed in the hospital ward of the county jail where he was confined until the morning of January 18, 1954, when the cause was called for further proceedings. At this time defendant was returned to court by the sheriff and his counsel was present. The court thereupon ordered a forfeiture of the bail bond theretofore posted by appellant, bail was fixed in the sum of $25,000 and the cause ordered on calendar January 19, 1954, for resetting. At this time the court appointed Dr. Walter Dodge, pursuant to section 1871 of the Code of Civil Procedure, to examine defendant and report his findings to the court.

On the following day (January 19, 1954) Dr. Dodge examined defendant and under the caption of ''Comment'' epitomized his report as follows: ''From the history given and from the results of my examination, I believe that this

man is in good health. I found no evidence of any strangulation of his hernia and, from the history as related to me, I greatly doubt that on the dates he mentioned, namely four weeks ago and one week ago, that he had any strangulation of his hernia. This opinion is based principally on his statement that on each of these occasions the hernia was very easily reducible and that he reduced it himself. This is not the history of a strangulated hernia.

"His hernia, while of good size, is not apparently disabling as he informed me that he has been playing golf very regularly up until a short time ago.

"This man is physically able to attend court at this time. He has been getting about in a normal manner, has been quite active and with no complaints. He probably would be more comfortable with a properly fitting truss and at some future time a surgical repair of his hernia should be done."

On April 16, 1954, appellant surety company appeared in court by its counsel and defendant personally appeared with his attorney. Both made motions to vacate the order of forfeiture entered on January 18, 1954, and to exonerate the bail bond. Pursuant to the provisions of section 1305 of the Penal Code, appellant surety company filed its affidavit of noncollusion, and in support of his motion, defendant filed a supporting affidavit. The court received as an exhibit eight volumes of daily transcript of the testimony given in the case of *People* v. *Calvert & Green* (No. 162238) then on trial in another department of the court, and which will hereinafter be referred to. The motion of appellant surety company to set aside the order of forfeiture and exonerate its bond was denied. From such order this appeal is prosecuted.

With regard to the case of *People* v. *Calvert & Green,* above referred to, it appears that following the order forfeiting the aforesaid bail bond, defendant herein, John J. Calvert, and Dr. Green who furnished the affidavit to secure a continuance of defendant's trial, were indicted for violation of sections 182 (conspiracy) and 134 (preparing false evidence) of the Penal Code. This case was on trial and not completed at the time of the hearing on the motion to set aside the forfeiture. It is conceded that at the conclusion of the trial both defendants, Calvert and Dr. Green, were found not guilty in this last-mentioned proceeding.

Presumably, the purpose of receiving as exhibits in the case now before us, the transcripts of testimony given in the

subsequent trial was to show that the statements made in the affidavit of defendant physician when the motion for a continuance was made were true and that the defendant absented himself from the court only because of the advice given him by his doctor that to attend upon his trial would seriously and injuriously affect his health.

The record of the last-mentioned trial shows medical testimony, practically uncontradicted, that assuming the statements made by Dr. Green in his affidavit, at the time a continuance was sought, to be a true history of defendant's ailment, he should have remained in bed, and that therefore, the reason given by defendant for absenting himself from his trial was a reasonable one. At the trial of defendant and his doctor, the district attorney stated:

"MR. WICHELLO: May I say this your Honor? We have at all times been in a position to stipulate that if the statements in the affidavits in question were true that that would be the result we have never contended otherwise."

It is conceded that orders like the one now under consideration, in legal parlance, rest very much in the discretion of the court below, and will not be disturbed on appeal unless it is satisfactorily shown that the order is so plainly erroneous as to amount to an abuse of discretion.

The correct principle for the exercise of sound discretion is set forth in the early case of *Bailey* v. *Taaffe*, 29 Cal. 422, 424, and thereafter quoted with approval in the cases of *Demens* v. *Huene*, 89 Cal.App. 748, 753 [265 P. 389], and *Atkinson* v. *Atkinson*, 35 Cal.App.2d 705, 708 [96 P.2d 824].

In the first of the cases just cited it was said, "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates."

We are not here confronted with a case wherein the accused has fled the jurisdiction of the court, surreptitiously disappeared, failing to contact his counsel or to advise the court as to the reason for his absence at the time set for the commencement of the trial.

Section 1305 of the Penal Code authorizes the forfeiture

of the bail when a defendant "without sufficient excuse" neglects to appear on any occasion when his presence in court is lawfully required, and the same section provides that an order of forfeiture may be set aside when, within 90 days after such a forfeiture, the defendant and his bail appear, "and satisfactorily excuse the defendant's neglect. . . ."

█ We are persuaded that in the instant case there was a sufficient showing that the defendant's absence was excusable and certainly a sufficient showing to vacate and set aside the order of forfeiture. This is not a case wherein there was a conflict in the evidence as to why the defendant was not present for trial. The facts were admitted. He was advised by his physician that he was afflicted with an incarcerated right direct and indirect inguinal hernia and was under treatment therefor, being "confined to bed under heavy sedation, with the foot of the bed elevated, and compresses applied to the incarcerated hernia, in an attempt to replace the hernia into the abdomen." It seems clear to us that the conclusion is inescapable that the defendant "satisfactorily excused" his nonappearance when he submitted to and obeyed the order of his physician, and the advice of his attorney. To hold otherwise would be to say that the defendant was required to disregard the admonition of his doctor that his appearance in court would create a clear and present danger to his health, if not to his life, should complete strangulation of the hernia ensue.

As to the reasonableness of defendant's conduct in not appearing for trial in deference to the advice of his physician and attorney, it is noteworthy that, as heretofore pointed out, Dr. Crahan, one of the court-appointed physicians, suggested the use of an ambulance to transport defendant from his residence in Long Beach to the Los Angeles county jail and upon arrival at the jail the doctor ordered suspension of the usual procedure for "booking" a prisoner and directed that defendant be placed in the hospital ward of the jail where he remained over the weekend and until he was taken into the courtroom situated in the same building as the jail.

In matters of bail forfeiture it should be borne in mind that bail is not taken on forfeiture as money is taken for a debt due upon a valid consideration. █ The object of bail is to insure the attendance of the principal and his obedience to the orders and judgment of the court. There should be no suggestion of revenue to the state or county, nor punishment to the surety.

■ In passing upon the question of whether the trial court has abused its discretion in denying or granting remission of a bail forfeiture, the facts of the individual case must be taken into consideration and the purpose of bail kept in mind. The cause and purpose of defendant's nonappearance as well as the good faith of the surety are also factors. Consideration should also be given to whether default of the party was wilful, whether notwithstanding the default a trial of the cause could be had, and whether public justice required that the penalty of forfeiture be enforced.

■ No citation of authority is needed for the statement that in ruling upon a motion to set aside an order of forfeiture of bail the term discretion when used as a guide to judicial action means *sound* discretion, not discretion exercised arbitrarily, but with due regard for that which is right and equitable under the circumstances. It means discretion directed by reason and conscience to a just result.

■ Flanked by this legal background and from a consideration of the circumstances here present, in the light of the provisions of section 1305 of the Penal Code, we are satisfied that there was presented to the trial court an unrebutted *prima facie* showing that justice did not require the enforcement of the forfeiture and that the denial of the motion to vacate the order of forfeiture constituted an abuse of discretion.

The order appealed from is reversed and the cause remanded with directions to the court below to vacate and set aside the order of forfeiture and to exonerate the bond in question.

Doran, J., and Drapeau, J., concurred.