[Civ. No. 22124.   Second Dist., Div. Three.   Aug. 28, 1957.]

THE PEOPLE, Respondent, v. HOWARD MILTON BAN-
NISTER, Defendant; ANCHOR CASUALTY COM-
PANY (a Corporation), Appellant.

Thomas B. Sawyer for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and
Edwin P. Martin, Deputy County Counsel, for Respondent.

VALLÉE, J.—Appeal from an order denying a motion of a surety to discharge a forfeiture of bail.

Howard Bannister was charged by information with assault with a deadly weapon (Pen. Code, § 245), and with assault with a deadly weapon with intent to commit murder. (Pen. Code, § 217.) Bail was fixed in the amount of $5,000. Appellant Anchor Casualty Company posted a $5,000 bond and Bannister was released from custody. On March 13, 1956 Bannister was present with his counsel in Department 43 of the Superior Court of Los Angeles County. On Bannister's motion trial of the cause was continued to April 5, 1956 at 9 a. m. Bannister did not appear on April 5; his bail was forfeited; a bench warrant was ordered and issued. On May 6, 1956 Bannister was arrested by the police of the city of Burbank. On the same day appellant formally surrendered him into custody and received a certificate of surrender.

On May 29, 1956 Anchor filed a notice of motion to vacate the forfeiture and exonerate the bond. The motion was heard and denied. On June 26, 1956 defendant changed his plea from not guilty to guilty, Count I, assault with a deadly weapon. On June 29, 1956 Anchor filed a second notice of motion to vacate the forfeiture and exonerate the bond. This motion was heard and denied on July 3, 1956. Anchor appeals from the latter order.

The motion was made on the ground Bannister's failure to appear was the result of excusable neglect and was based on an affidavit of Bannister and one by Anchor's attorney. The affidavit of Bannister stated: About June 1, 1954 he was involved in an industrial accident resulting in serious injury to his back; since the injury, he has been in and out of various hospitals getting treatment for the injury and "associated nervous condition"; lengthy proceedings were held pursuant to the Workmen's Compensation Act and a settlement reached in January 1956; since receiving the injury he has been extremely nervous and anything unusual affects his mental attitude and judgment; he reported to the Veteran's Administration for examination; the doctors advised him to be admitted to the hospital as an in-patient and to have shock treatment and other therapy for the mental condition which they advised him resulted from the original injury; he did not wish to be admitted to that hospital for such treatment and has hoped that with time his condition would improve; after he was involved in the present offense he retained William

Esterman as his attorney; Mr. Esterman died shortly after his arrest and his case was taken over by Mr. Major; he had numerous discussions with Mr. Major concerning his case but he did not feel Major was interested in the case and he (Bannister) was considerably worried about its outcome.

The affidavit of Bannister further stated: On April 4, 1956, he left his home to go to court but due to his nervous anxiety he became worried and was unable to exercise proper judgment; he was dissatisfied with his legal representation and decided to try to work out some arrangement to obtain other counsel; his father and mother were separated when he was eight years old and he had not seen either for over a year and does not know their present whereabouts; during one period of his childhood he spent several months with an uncle in Dallas, Texas; on April 4, 1956, he felt his uncle was the only one who could assist him; he drove to his uncle's home near Dallas and remained there until May 4, 1956; he realized during all of this time that he would have to return to Los Angeles to appear in court; on May 4, 1956, he decided to return to Los Angeles as it appeared there was nothing his uncle could do for him; he drove to Los Angeles, went to his wife's home in Burbank and informed her he was going down to the Burbank police department to surrender; after he left the house he learned she immediately notified his bondsman who informed the police, and he was arrested and surrendered into custody in Burbank while he was on the way to the police department; since he has been in custody in the county jail he has been examined by Dr. Crahan with respect to his mental condition; he believes that if he had been well he would have appeared in court at the time set and that his failure to appear was due to the condition resulting from his injury and subsequent developments.

The affidavit of Anchor's attorney merely stated that on May 6, 1956 bail surrendered Bannister into the custody of the chief of police of Burbank and thereafter he was transferred to the county jail to be held subject to the order of the court.

The court also had before it two affidavits filed in support of the first motion—one by Bannister and one by appellant's attorney-in-fact. This affidavit of Bannister stated: He has a wife and two children who are dependent on him for support; after he was released on bail he became worried about his case and how his family would be taken care of if he were sent to jail; he was attempting to make some arrangement for

them; he was unable to make any arrangement by April 5, 1956, so he did not appear; he intended to return as soon as he could make such an arrangement; he left for a trip to Dallas to visit his folks and then returned to surrender; as soon as he returned to Burbank he was returned to custody on May 6, 1956; he did not wilfully disobey the orders of the court. The affidavit of appellant's attorney-in-fact stated the cause or reason for the forfeiture was without the knowledge, consent, connivance, or collusion of appellant or any of its agents.

The court also had before it a report of Dr. Marcus Crahan as to Bannister's "mental status." Dr. Crahan had been appointed by the court to examine Bannister with respect to his mental status on motion of Bannister's counsel. In an interview Bannister told Dr. Crahan "I was on bond and I got frightened about jail and everything, and I jumped bond. I went to Dallas, Texas. I stayed there a couple of weeks, and came back out here and was going to turn myself in, but I didn't get that far. I went over to see my wife and kids and had an argument with her, and then I went up to a bar and started drinking to get nerve enough to go to the police, and somebody told them I was in the bar, and they came and arrested me for this assault with a deadly weapon May 6th." Dr. Crahan performed an electroencephalogram. Results were normal. Dr. Crahan reported Bannister "was fully conscious, aware of his surroundings, and had a clear insight into the nature and quality of his act, and knew the difference between right and wrong in its relationship."

Section 1305 of the Penal Code empowers the court to direct the forfeiture of an undertaking of bail to be discharged if at any time within 90 days after the undertaking was declared forfeited the defendant and his bail appear and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail.[1]

Appellant's contention is that the denial of the motion to vacate forfeiture of the undertaking of bail was an abuse of discretion.

---

[1] The pertinent part of Penal Code, section 1305, reads: "[I]f at any time within 90 days after such entry in the minutes, the defendant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may

The motion was made on the ground Bannister's failure to appear on April 5, 1956, was the result of excusable neglect.

■ The burden of proof was on appellant to establish by competent evidence a satisfactory excuse for Bannister's failure to appear for trial. (*People* v. *Niccoli*, 102 Cal.App.2d 814, 819 [228 P.2d 827].) In Niccoli, a case in which the trial court had denied discharge of forfeiture of bail, Mr. Presiding Justice White wrote (p. 820):

"[T]he question of fact was for the trial court and even though there is room for a difference of opinion, the judgment of an appellate tribunal cannot be substituted in such circumstances for the conclusion reached by the duly constituted arbiter of the facts."

■ Unless a clear case of abuse is shown and unless there has been a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Estate of Hart*, 119 Cal.App.2d 310, 318 [259 P.2d 703].)

■ The rule that a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, applies to affidavits. (*People* v. *Kirk*, 109 Cal.App.2d 203, 207 [240 P.2d 630].)

■ All facts which reasonably may be inferred from affidavits are evidence. (*Bailey* v. *County of Los Angeles*, 46 Cal.2d 132, 137 [293 P.2d 449]; *Baratti* v. *Baratti*, 109 Cal. App.2d 917, 922 [242 P.2d 22].)

■ There is no showing of an abuse of discretion at bar. Bannister was within the jurisdiction on April 4, 1956. The learned trial judge was not compelled to believe his story that he was nervous, worried, and unable to exercise proper judgment. Dr. Crahan said he was normal. In his first affidavit Bannister said he did not appear because he was unable to make any arrangement so his family would be taken care of if he were sent to jail, and he went to Dallas to visit his folks. In his second affidavit he gave no reason for not appearing except nervousness and dissatisfaction with his counsel. In that one he said he went to Dallas to see his uncle for help. He told Dr. Crahan he got frightened about

be just. If within 90 days after such entry in the minutes, it be made to appear to the satisfaction of the court that the defendant is dead or is physically unable, by reason of illness . . . to appear in court at any time during said 90 days, and that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just."

jail and "jumped bond." The court could well have concluded from the record before it that Bannister's failure to appear was deliberate and intentional and that no excuse for his failure to appear was shown.

Affirmed.

Wood (Parker), J., concurred.

Shinn, P. J., concurred in the judgment.