[Crim. No. 6578. In Bank. Feb. 19, 1960.]

THE PEOPLE, Appellant, v. ROBERT DANIEL WILCOX et al., Respondents.

Harold W. Kennedy, County Counsel (Los Angeles) and Robert W. Garcin, Deputy County Counsel, for Appellant.

Thomas B. Sawyer for Respondents.

. WHITE, J.—The People appeal from an order of the trial court reinstating a forfeited bail bond and the subsequent exoneration of the same.

The circumstances under which the bond was posted, forfeited and reinstated are as follows: the Grand Jury of Los Angeles County returned an indictment wherein one Robert Daniel Wilcox (hereinafter referred to as the defendant) was accused of the crime of issuing checks without sufficient funds, a felony. (Pen. Code, § 476a.) Defendant entered a plea of not guilty and bail was fixed in the sum of $1,000. Respondent Anchor Casualty Company is defendant's surety on said bail bond. Trial was set for June 20, 1958. The defendant did not personally appear on that date, but an appearance was made in his behalf by the public defender. The defendant's bail was thereupon ordered forfeited and a bench warrant was issued for his arrest. At that time the court appointed its medical examiner "to examine the physical condition of the defendant and to report to the court." Proceedings were continued to June 23, 1958.

On June 23 the court-appointed medical examiner filed a four-page report, stating among other things, that the defendant was then under the care of a Dr. Donald E. Hine for thyrotoxicosis; that the defendant's condition was critical; that any emotional strain might prove fatal, and that in the opinion of the examiner, the defendant was "in no way attempting to malinger or evade prosecution." The examiner recommended that the defendant be permitted to remain under medical care "in the interest of his life and health." There is also in the record a letter from Dr. Hine substantiating the medical examiner's report. The trial court, at the June 23 hearing, continued the trial to August 25, 1958, and ordered the bench warrant to be withheld until that date.

On August 25, when defendant again failed to appear the cause was continued to September 22, 1958, for trial, and the bench warrant was again ordered withheld.

On September 18, prior to the aforesaid date scheduled for the trial, the defendant's surety filed its notice of motion for an order vacating and setting aside the former order of forfeiture, and exonerating the bond. The affidavits of the attorney for the surety, filed in support of the motion, stated that the defendant's failure to appear was without knowledge, consent, connivance or collusion of the surety; that the defendant was unable to appear by reason of his illness; that he was then confined in a hospital in Pennsylvania, and that his condition would not permit his appearance. The notice recited that the motion would be made on the ground that

the failure of the defendant to appear "was excusable and was without connivance or collusion of his bail."

On September 22, the date set for trial as aforesaid, both the surety's motion and the trial were ordered off calendar. The bench warrant, theretofore issued and withheld, was ordered to issue. On October 8, 1958, the surety filed a notice of motion for the restoration of its motion to the calendar. It also filed affidavits of the defendant and of an attending physician at the Veterans Administration Hospital in Philadelphia, Pennsylvania. The substance of these affidavits is that the defendant did not wilfully fail to appear; that he was unable to appear since June 20, 1958, by reason of serious illness; that he was compelled to travel to Pennsylvania for his medical treatment because of financial inability to obtain the same treatment near his place of residence; that he was confined in the aforementioned hospital, and would be for some time, and that his present condition of health prevented his attendance in court.

On October 15, 1959, counsel for all parties being present, the court, after hearing, granted the surety's motions, vacated the forfeiture of bail, reinstated and exonerated the bond. The People appeal from this order.

■ A preliminary question relates to the appealability of the order. Section 1238 of the Penal Code, which sets out orders from which the People may appeal in criminal matters, does not include an order setting aside a forfeiture of bail. Nor does section 963 of the Code of Civil Procedure specifically mention such an order as appealable. However, that section provides in subdivision 1 for an appeal from a "final judgment entered in an action." In *Howe* v. *Key System Transit Co.,* 198 Cal. 525, the court stated at page 531 [246 P. 39], that the right of appeal from orders not within the express provisions of section 963 has been sustained upon the theory that where, in effect, an order is a final judgment against a party in a collateral proceeding growing out of the action it "is so far independent of the suit itself as to be substantially a final decree for the purpose of an appeal, although there has been no final decree in the suit. (Citations.)" (See also *Kneeland* v. *Ethicon Suture Laboratories,* 113 Cal.App.2d 335 [248 P.2d 447].) That test is met in the present case. The forfeiture of bail is an independent, collateral matter, civil in nature, and the effect of an order on a motion to set aside such a forfeiture is substantially a final determination at the trial court level of issues affecting the surety, aside from the principal matter

before the court. The situation is not to be compared to that following an order of forfeiture, as in that case the affected parties may still seek the further relief of the trial court by a motion to set aside the forfeiture (Pen. Code, § 1305), and are not entitled to an appeal until such relief has been sought. (*People* v. *Hodges,* 205 Cal. 476 [271 P. 897]; *People* v. *Oppenheimer,* 147 Cal.App.2d Supp. 827 [305 P.2d 306].) But appeals, after the denial of a motion to set aside a forfeiture, have been entertained without question of the appealability of such orders. (See *People* v. *Calvert,* 129 Cal.App.2d 693 [277 P.2d 834]; *People* v. *Niccoli,* 102 Cal.App.2d 814 [228 P.2d 827]; *People* v. *Kersten,* 60 Cal.App.2d 624 [141 P.2d 512].) No distinction should be drawn when the motion to set aside is granted, because in either event the determination is then final and collateral to the principal issue.

 It is claimed by the People that the trial court abused its discretion in vacating the order of forfeiture on the ground that the showing was insufficient to afford a basis for affirmative relief. The motion was made pursuant to section 1305 of the Penal Code. That section provides in pertinent parts that where the defendant fails to appear "without sufficient excuse . . . the undertaking of bail . . . must thereupon be declared forfeited. But if at any time within 90 days after such entry in the minutes, the defendant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just. . . ."

No proof was offered on the part of the People, and it must therefore be assumed that their contention is that the showing made was insufficient as a matter of law. The record fails to show that at the time of the forfeiture any document or proof of the defendant's condition was before the court. Between the time of forfeiture and revocation of that order, the court received its own medical examiner's report, the affidavits of the attorney for the surety, the affidavits of the defendant and his attending physician. These documents contained reasons tending to excuse the defendant's failure to appear. They affirmatively show the inability of the defendant to personally appear by reason of his continuing illness. They further show that the defendant's absences were without the connivance of the surety.

An abuse of discretion is said by the People to be indicated because, it is claimed, there was no showing that the defendant was unable to attend for the full period involved. On the contrary, on each proof submitted to the court after its order of forfeiture, the defendant was described as unable to attend court without endangering his life and health. In the absence of any showing otherwise it is fair to presume that this condition continued to exist in the interim between such proofs. Other attacks on the sufficiency of the proof are similarly without merit. It is claimed, for instance, that a statement in an affidavit of the attorney for the surety to the effect that the defendant had been unable to attend *since* June 20, 1958, was insufficient to establish that he could not have attended on June 20, the date of the order of forfeiture. But the record otherwise shows, through the medical report of the court-appointed examiner, that on June 23, three days later, the defendant was critically ill with thyrotoxicosis, that an emotional strain might prove fatal, and that he was not malingering. In these circumstances the state of the defendant's health on June 23 may properly have been considered in drawing conclusions as to the state of his health on June 20, in the absence of an adverse showing. Attack is also made on the same affidavit in that the affiant states that he has been ''advised'' of the defendant's inability to attend, rather than stating the grounds why the defendant could not attend. Again, there is otherwise sufficient substantial proof of the defendant's condition which is not subject to appellant's criticism. Other attacks of a similar nature are likewise lacking in substance.

The determination of a motion to set aside an order of forfeiture is entirely within the discretion of the trial court, not to be disturbed on appeal unless a patent abuse appears on the record. (*Bailey* v. *Taaffe*, 29 Cal. 422; *People* v. *Bannister*, 153 Cal.App.2d 480 [314 P.2d 577]; *People* v. *Niccoli, supra*, 102 Cal.App.2d 814.) We are persuaded that in the present case there was a sufficient showing that the defendant's absence was excusable, and manifestly sufficient to vacate and set aside the order of forfeiture. This is not a case where the defendant fled the jurisdiction of the court, surreptitiously disappeared, failing to contact his counsel or to advise the court of the reason for his absence. Nor is there any conflict in the evidence as to why the defendant was not present or whether he had exercised good faith. The object of bail and its forfeiture is to insure the attendance

of the accused and his obedience to the orders and judgment of the court. In matters of this kind there should be no element of revenue to the state nor punishment of the surety. (*People* v. *Calvert, supra,* 129 Cal.App.2d 693.) Accordingly, there was no abuse of discretion in setting the forfeiture aside.

It is next contended that the court lacked jurisdiction to set aside the order of forfeiture for the reason that section 1305, when read with section 1306 of the Penal Code, requires the trial court to enter a summary judgment after 90 days have expired, following the order of forfeiture of bail. Section 1306 provides in part: ''When any bond is forfeited . . . 90 days after such forfeiture . . . [the court] shall enter a summary judgment against each bondsman named in such bond in the amount for which such bondsman shall have bound himself. . . .'' Section 1305, as stated, provides that the order of forfeiture may be set aside ''if at any time within 90 days after such entry in the minutes, the defendant and his bail appear, and satisfactorily excuse the defendant's neglect. . . .'' In *Leach* v. *Dinsmore,* 22 Cal.App.2d Supp. 735, 740 [65 P.2d 1364], similar contentions were made, and the court stated: ''Contrary to defendants' contention, section 1305 Penal Code does *not* require 'the appearance of the defendant *and* the setting aside of the forfeiture within ninety days after the order of forfeiture.' It requires only that the *appearance and showing* be made (possibly only commenced) within the 90-day period.

''The provision here as to the time limit for action is cast in a form quite similar to that of section 473 Code of Civil Procedure, which is construed to mean that if the application for relief is made within the time specified, the action of the court thereon may be taken after that time has expired. (See 14 Cal.Jur. 1069, 1070; *In re Yoder* (1926), 199 Cal. 699, 702 [251 P. 205]; *Wolff & Co.* v. *Canadian Pac. Ry. Co.,* (1899) 123 Cal. 535 [56 P. 543].)''

The statement of the law in the Leach case is based on sound reasoning and justice. If relief may be applied for at any time within the 90-day period certainly the court can not be expected to act on the application before the end of the period.

Section 1306 can not be construed to require a summary judgment when the court has pending before it an application for relief under section 1305 at the end of the 90-day period. As the relief sought in the present case was commenced within the statutory period the court did not lose jurisdiction to grant that relief and to set aside the forfeiture.

■ We come now to a consideration of the court's exoneration of the bond. We are satisfied that while the circumstances in the present case justifiably operated to suspend the liability of the surety while such circumstances continue in effect, nevertheless, when prevailing circumstances in the future no longer justify a failure to appear on the grounds presently asserted, the surety would then be required to either produce the defendant in court to answer the indictment pending against him or, if the surety be so advised, seek exoneration of the bond pursuant to section 1300 of the Penal Code or other applicable law.

It is not here contended that the surety is entitled to exoneration on the ground that performance of its obligation was rendered impossible by any act or hindrance on the part of the state, the other party to the contract for bail. (See *People* v. *Meyers*, 215 Cal. 115, 118, 119 [8 P.2d 837].) No reason appears which would justify exoneration of the bond on that ground or any other ground. (See generally, 7 Cal.Jur.2d 593-596.)

The order of the trial court, insofar as it decrees that the bond is exonerated, is reversed. In all other respects, the order is affirmed. The parties will bear their respective costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.