Appellate Department, Superior Court, Santa Clara

[Crim. A 401. Oct. 31, 1967.]

THE PEOPLE, Plaintiff and Appellant, v. BARBARA J. HADLEY, Defendant and Respondent; JAMES BLACK-WELL, Bail Bondsman and Respondent.

Louis P. Bergna, District Attorney, and John Schatz, Jr., Assistant District Attorney, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Virginia Days for Bail Bondsman and Respondent.

HALL, P. J.—The People have appealed from an order of the trial court reinstating and exonerating bail after for- A review of the record necessitates that the court's judgment be disaffirmed. The cardinal reason for that result is the consideration that the hearing was erroneously

conducted as an ex parte matter and without notice to the People. The prosecution was thus deprived of an opportunity to cross-examine witnesses and to present opposing evidence. Although that defect in itself is sufficient to require reversal, this court is impelled to rule on other issues presented on this appeal so that guidance may be established for the conduct of the retrial of the cause.

As a prelude to the expression of this court's reasoning, a brief factual summary of the record will be helpful.

The bail herein was in the sum of $2,200 written by respondent United Bonding Insurance Company. It was posted through Rollin Ray Bail Bonds for James Blackwell doing business as Blackwell Bail Bond Agency, who is principally liable on the bond. The purpose of the bail was to assure the appearance of defendant Barbara Hadley who was charged with petty theft. When on December 6, 1966, the defendant failed to appear for arraignment, the bail was ordered forfeited. On December 14, the clerk of the court mailed notice of forfeiture to the depositor and on May 29, 1967, the court on its own motion issued a bench warrant for the defendant's arrest. On May 31, 1967, being 176 days after the December 6 minute order of forfeiture, the attorney representing the bail orally moved the court to set aside the forfeiture pursuant to Penal Code, section 1305. Although 4 days yet remained of the 180 specified by the statute as the mandatory period within which application for relief must be presented, no notice of the application or of its hearing was given to the People. On May 31, the date of the application and without the presence of counsel for the appellant, the hearing proceeded ex parte. Based only upon the showing by counsel for the respondent the court made its order setting aside the forfeiture, reinstating and exonerating the bond.

Penal Code, section 1305, pursuant to which the court purported to act, in pertinent part reads as follows: ". . . if within said 180 days after such entry in the minutes [of the order of forfeiture] it be made to appear to the satisfaction of the court that the defendant is dead, physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities, to appear in court at any time during said 180 days, and that absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just. . . ."

The declaration in support of the motion and which was filed with the court is as follows:

"I, JAMES BLACKWELL, hereby declare under penalty of perjury as follows:

"1. That on November 26, 1966, your declarant became surety for defendant above named in the above entitled action by execution of Bail Bond No. 3E84178.

"2. That said bond was forfeited on December 7, 1966, for defendant's failure to appear for arraignment; said failure was without the connivance of declarant.

"3. That immediately upon receipt of notice of forfeiture your declarant made diligent search for defendant and in January of 1967 heard that defendant was in custody of the 18th Precinct in New York, New York, on a felony charge pending trial.

"4. That your declarant requested the particulars from the New York law enforcement regarding the date of defendant's arrest, scheduled release date, etc. and in February of 1967 your declarant received word that such information would not be released to a private person or firm but only to law enforcement offices.

"5. That your declarant has made an unsuccessful attempt to obtain the information through federal law enforcement.

"6. That on May 29, 1967, your declarant brought the above facts to the attention of Honorable Robert Beresford who issued a bench warrant for defendant's arrest.

"7. That declarant is informed, and on that information believes that defendant is in custody of the civil authorities in New York, New York, the 18th Precinct.

"WHEREFORE, your declarant prays that the motion for the court's order setting aside the forfeiture and exonerating the bond be granted."

Other than the foregoing declaration, the only other information tendered at the hearing was comprised of unsworn statements of counsel in substance as follows: "I have here a declaration from the bondsman in this matter indicating that immediately upon receiving notice of the forfeiture, he attempted to locate the defendant. He did locate her in custody in New York. . . . I have here a copy of my letter sent by the bondsman to the Police Department after talking to the sergeant to whom it is addressed confirming that Barbara Hadley was in custody; however, this is the notice sent back to him circling that he should get in touch with the local Police Department."

The fundamental error illustrated by the foregoing summary of the record is the court's failure to recognize and treat the proceeding as adversary in nature. That it should have been so understood is unquestionably indicated by numerous authorities. For example, *People* v. *Wilcox* (1960) 53 Cal.2d 651 [2 Cal.Rptr. 754, 349 P.2d 522, 78 A.L.R.2d 1174]. In that case the court said that "[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court." In *People* v. *Meidell*, 220 Cal.App.2d 105 [33 Cal.Rptr. 564] and in *People* v. *Rolley*, 223 Cal.App.2d 639 [35 Cal.Rptr. 83], as well as in *Wilcox, supra,* it has been consistently held in construing Penal Code, section 1305 that the People, as well as the bondsman, have the right of appeal from orders granting or denying relief from forfeiture of bail. The clear import of these decisions must be the rational view that the People's interest is to insure the fulfillment of the purpose of bail and its forfeiture, and that any application for relief from the obligations of bail represents an adversity of interest.

It would result in complete illogic to argue that one having the right of appeal does not also have the equal right to be present and complain in the first instance, at the trial level.

Once, as here, the adversary nature of a proceeding is established, then it follows that notice of all motions must be given whenever the order sought may affect the right of an adverse party. (*McDonald* v. *Severy* (1936) 6 Cal.2d 629 [59 P.2d 98]; *Bond* v. *Farmers & Merchants Nat. Bank* (1944) 64 Cal.App.2d 842, 848 [149 P.2d 722].) Correlative to the foregoing is the further rule that a court, after any judicial order regularly made, may not enter another and different order without notice to the adverse party. *Beyerback* v. *Juno Oil Co.* (1954) 42 Cal.2d 11 [265 P.2d 1]. That concept answers respondent's claim that the court herein could have acted to reinstate bail on its own motion and without notice to the People. Volume 2 Witkin, California Procedure (1954) page 1641, succinctly points to the rule that notices must be given of any application where the rights of an adverse party are affected, even though no statute, as here, specifically requires it. The only exception is where there is pressing necessity to dispense with notice. Respondent contends that the near expiration of the 180-day period for relief created such a necessity, implying that the court would have been divested of jurisdiction with the end-

ing of the period. The answer to that argument is again found in *Wilcox, supra,* at page 637, where the court held that Penal Code, section 1305 does not require the court to act within the statutory period, but rather ". . . requires only that the *appearance and showing* be made (possibly only commenced) within the . . . period." In that behalf the court compared relief applications under Penal Code, section 1305 to applications for relief from defaults under Code of Civil Procedure, section 473. It concluded that if the application is made seasonably under either statute then the court does not lose jurisdiction to make its order after the end of the period.

For the key to the type of notice required, we turn again to *Wilcox, supra,* at page 654, where the court held that ". . . forfeiture of bail is an independent, collateral matter, civil in nature . . . ." Necessarily being civil in nature the Code of Civil Procedure must apply, specifically section 1005 as to time, and section 1010 which provides that notices of motions must be in writing, and state when and the grounds and papers, if any, upon which the motion will be heard.

The underlying reason for notice is to protect the adverse party in his right of cross-examination and his right, if need be, to present evidence opposing that of the applicant. The right of cross-examination in adversary proceedings in which evidence is produced is a fundamental proposition in our system of justice. 54 Cal.Jur.2d, Witnesses, section 108; Witkin, California Evidence (2d ed. 1966) 1105; *People v. Flores* (1936) 15 Cal.App.2d 385 [59 P.2d 517]; *Smith v. Smith* (1954) 125 Cal.App.2d 154 [270 P.2d 613]; *Massachusetts etc. Ins. Co. v. Industrial Acc. Com.* (1946) 74 Cal.App.2d 911, 916 [170 P.2d 36]. These authorities by way of example hold that the right to cross-examine is not a matter of privilege, but of absolute right, denial of which may constitute a denial of due process of law. There are two purposes for the rule. The chief purpose is to test the credibility, knowledge, and recollection of the witness. The other purpose is to elicit additional evidence. Witkin, *op. cit., supra,* at page 1105.

In *Priestly* v. *Superior Court,* 50 Cal.2d 812 at p. 822 [330 P.2d 39], Justice Carter in a concurring opinion gave the practical reasons for the rule. "Apart from historical considerations, the reason cross-examination is one of the ingredients of a fair hearing is practical. In a trial or preliminary hearing there is usually a disputed factual issue. Where this occurs, cross-examination provides a major method for establishing the accuracy and reliability of direct testimony. The

method of cross-examination is necessary since experience tells us that ex parte statements are too uncertain and unreliable to be considered in the investigation of controverted facts.'' The last sentence of Justice Carter's quoted language, that referring to the unreliability of ex parte statements, has particular cogency to the case at bar where, as has been said, the matter was heard completely ex parte. ■ In addition, the evidence was hearsay and largely based on information and belief. Declarant for respondent admitted that he could not vouch for the accuracy of his conclusion that the defendant Hadley was in police custody.

Clearly the trial court would have been greatly benefited by the adversary responsibility of counsel for the People. By his presence credibility of the evidence could have been better tested and the opportunity offered to elicit possible conflicting evidence. The burden of investigation and adversary proof is with respective counsel for the parties and is not the obligation or function of the court. It is, however, the province of the court to insure the accomplishment of that concept. It is fundamental to our system that every judicial act must imply not only a conscientious resolution of the issues from the facts presented, but also equal certitude that there are no other influential facts reasonably obtainable.

In this case that last ingredient is patently lacking, and it is difficult to assume that the court could have found from the record the measure of ''satisfaction'' required by the statute to appear in order for bail forfeiture to have been set aside. The declaration itself constitutes no doubt a sufficient prima facie showing upon which to base the motion; but it is not, however, sufficient to support a final judgment. That must be our conclusion in view of the authorities which hold that the burden of proof is on the moving party to show by *competent* evidence that one of the conditions set forth in Penal Code, section 1305 exists in order to entitle him to relief. *People* v. *Bannister*, 153 Cal.App.2d 480 [314 P.2d 577] ; *People* v. *Niccoli*, 102 Cal.App.2d 814 at p. 819 [228 P.2d 827].

Had the court had the benefit of the stimulating and inquiring responsibility of counsel implied from the adversary system, then perhaps it would not have lapsed into the further serious error of exonerating the bail where, as here, the record offers no support for such an order. Even assuming that the defendant Hadley was in custody and therefore unavailable on the arraignment date, there was no showing of permanent unavailability as would be the situation if there

were a showing by competent evidence the defendant was dead.

On the retrial of this cause attention should be directed to *People* v. *Wilcox, supra,* at page 658, where the court said: ''We are satisfied that while the circumstances of the present case justifiably operated to suspend the liability of the surety while such circumstances continue in effect, nevertheless, when prevailing circumstances in the future no longer justify a failure to appear on the grounds presently asserted, the surety would then be required to either produce the defendant in court to answer the indictment pending against him or, if the surety is so advised, seek exoneration of the bond pursuant to section 1300 of the Penal Code or other applicable law.''

 While on the subject of the erroneous order for exoneration, it is pertinent to take note of respondent's argument questioning the sufficiency of the notice of appeal. It is contended that the notice related only to the order setting aside the forfeiture and made no reference to the portion of the order exonerating bail. Counsel has argued that no substantial rights can be affected by a decision of this court regarding the setting aside of the forfeiture because the bail bond, having been exonerated, is no longer in force. Thus, it is claimed that all issues upon which this court can rule are moot. Respondent's position is unsound. It is the general rule that notices of appeal are entitled to liberal construction and ambiguity will be resolved in favor of the validity of the notice, particularly where no party could be misled to his prejudice. Obviously, there is no misleading herein. Further, there was in form but a single order which was clearly referred to by the notice and thus this court feels free to consider all issues relating to the order. 3 Witkin, California Procedure (1954) page 2289.

 As a further direction to the trial court it is our opinion that the district attorney's office, as distinguished from the county counsel's office, is the proper representative of the People to receive notices in forfeiture proceedings. We are directed to that view by practical considerations as well as statutory interpretation. Section 26521 of the Government Code provides that the district attorney shall prosecute all actions regarding fines, penalties and forfeitures. Section 2762 of the same code provides that the county counsel shall discharge all duties of the district attorney except those of public prosecution. It seems clear that the existence of bail and its in-

fluence to ensure the presence of the defendant is inextricably a part of the prosecution process, and thus becomes the concern of the district attorney. From a practical point of view, that office, being closely related to law enforcement agencies as compared with the county counsel's office, where the duties are largely civil, is in a far better position to inquire and present evidence to the court on such matters as are raised here relating to incarceration of the defendant elsewhere. When, however, the state or the county require legal representation for the collection of an obligation created by a bail bond, such a proceeding is wholly unrelated to the prosecution procedure and should be accomplished by the county counsel's office.

This distinction between the duties of the two offices is borne out by implication from numerous statutes. For example, Penal Code, section 1274 provides for notice to the district attorney when bail is a matter of discretion; Penal Code, sections 1276 and 1302 likewise refer to the notice to the district attorney. Section 1306 provides for summary judgment and proceedings against the bail when its forfeiture has become final. It requires that the court ordering the forfeiture, where it has had no jurisdiction to give judgment in an action arising upon contract of similar nature and amount, will tender to the district attorney of the county in which the court is located the bond, together with a certified copy of its order declaring the same forfeited. Thereupon, the district attorney must immediately file said bond and said certified copy of forfeiture in the court having jurisdiction to render the judgment. It seems, therefore, the practical and rational concept that the district attorney should be charged with all matters relating to bail up to the point where a civil suit is to be instituted.

█ Passing to another issue raised in this appeal, this court will refer again to Penal Code, section 1305 which authorizes the court to grant relief from forfeiture ''upon such terms as may be just.'' Seemingly, the People have argued that even ɩssuming relief should have been granted, the failure to grant relief conditionally showed an abuse of discretion. We are not prepared to so hold as a matter of law. The mere failure to impose a condition does not per se show abuse of discretion, for we cannot say that the court did not consider the matter. There is no implication from the statute that conditions must be imposed. The clause in the statute referring to conditions becomes permissive by the use of the

term "may." It is not mandatory. There are, of course, numerous authorities affirming the trial court's right to impose monetary payments as a condition for relief. This presumedly, in a proper case, is to compensate the People for the cost of returning a defendant to custody. In *People* v. *United Bonding Ins. Co.*, 240 Cal.App.2d 124 [49 Cal.Rptr. 360] and other like cases, the philosophy and considerations underlying the concept of conditional relief from forfeiture are thoroughly discussed and should be considered by the parties and the court on any rehearing of this cause.

 The final proposition urged by appellant, and with which we do not agree, concerns a further interpretation of Penal Code, section 1305. It has been contended that custody by the New York police does not come within the purview of the statute so as to entitle the bondsman to relief. As already noted the language of the statute requires the court, upon satisfactory showing, to grant relief where "the defendant is dead, physically unable, by reason of illness or insanity, or by reason of detention by civil or military authorities to appear in court at any time during said 180 days. . . ." The terms "civil" or "military authorities" are unmodified in the language of the Legislature by any other word or phrase. No ambiguity appears and it is not for this court to rewrite a statute. In *People* v. *Knowles* (1950) 35 Cal.2d 175 at p. 182 [217 P.2d 1] in interpreting a criminal statute the Supreme Court very aptly said: "The will of the Legislature must be determined from the statute; intentions cannot be ascribed to it at odds with the intentions articulated in the statutes . . . . there is no basis for supposing that the legislature did not mean what it said." At page 183 the court added further: "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history."

The relevant history of Penal Code, section 1305 has been adequately covered in *People* v. *Rolley, supra.* In that case the court was concerned with other matters arising under Penal Code, section 1305 which are not pertinent here. The court noted that in the last number of years the statute had been before the Legislature many times and said: "Each amendment has added language to broaden the surety's right to vacate the order of forfeiture." That being so, it would be indeed capricious for this court to reverse the historic trend and take unto itself the responsibility of narrowing the statute with the effect of making it more onerous to the surety.

There is no case squarely in point in California interpreting the meaning of the language with reference to civil authority. It is interesting to note, however, that in *Rolley, supra,* the defendant was in civil custody in New Mexico. The question of his custody there as distinguished from being in California custody was not raised by either party. Apparently the court, as well as the parties, tacitly accepted the clear language of the statute and assumed that foreign civil custody created no bar to relief from forfeiture.

In agreeing with that result, this court is also mindful that the obligations of the bondsman to the state are based on the concept that the bond is a contract. It is a fundamental rule of construction of contracts that all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and have in mind, necessarily enter into the contract and form a part of it without any stipulation to that effect, as if they were expressly referred to and incorporated in the contract. 12 Cal.Jur.2d, Contracts, 135; *Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union,* 45 Cal.2d 764 [291 P.2d 433]. Thus, for this court to alter the clear language of the statute would in effect be to create an additional contractual burden where none was intended or assumed by the parties.

The office of the County Counsel of Los Angeles has prepared a very excellent compendium on the subject of bail in California. Under date of September 8, 1967, it was apparently gratuitously presented to the presiding judge of each superior court and municipal court in the state, presumedly copies are readily available to other interested parties. It is excellently accomplished and to be generally commended. It does, however, and we must disagree, take the view that the term "civil authority" in Penal Code, section 1305 should be construed as limited to the jurisdiction of California. It cites numerous out-of-state cases and practical arguments in favor of that construction. While these arguments may be persuasive and entitled to consideration, we will only conclude that they should be far more appropriately addressed to the Legislature rather than to the courts.

In view of the foregoing, the cause is reversed, retrial to be had according to the directions herein contained so far as applicable.

Anello, J., and DeMarco, J., concurred.