Filed 5/30/14  P. v. Daly CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037241 |
| Plaintiff and Appellant, | (Monterey County Super. Ct. No. M77763) |
| v. | |
| JAMES E. DALY, | |
| Defendant; | |
| JAMES E. DALY et al., | |
| Real Parties in Interest and Appellants. | |

James E. Daly and his wife, R. Daly appeal from an order of the trial court denying their request to exonerate bail and set aside the motion for summary judgment.

STATEMENT OF THE FACTS AND CASE

In May 2004, Mr. Daly was charged with 22 counts of molesting his stepdaughter (Pen. Code, § 288, subdivision (a)).[1]  Bail was set at $500,000.  Mr. Daly was the sole owner of real property in Carmel Valley, California, and deposited the property as a bond for bail.  Mr. Daly executed and recorded a promissory note in the amount of $500,000

---

[1] All further statutory references are to the Penal Code.

and deed of trust to secure the note in favor of the Monterey County Court Executive Officer.

Mr. Daly married his wife, Mrs. Daly, in May 2004. In February 2005, Mr. Daly conveyed the real property to himself and Mrs. Daly as husband and wife, tenants in common.

Mr. Daly and his wife decided to sell the property to substitute cash for the property bond, and to secure funds for his legal fees. In late March or early April 2005, an offer was made on the property. The sale closed on April 29, 2005, and the proceeds were approximately $617,000.

When escrow closed on April 29, 2005, the promissory note of $500,000 was paid in full to the Superior Court.[2]

The trial in Mr. Daly's case began in March 2005. On Friday, April 8, 2005, both sides rested their cases. On that weekend, Mr. Daly fled to Ireland by way of Canada. On Monday, April 11, 2005, Mr. Daly failed to appear in court, and on Wednesday, April 13, 2005, Mr. Daly was convicted in absentia on all counts.

After Mr. Daly absconded in mid-April 2005, there was approximately $123,588.72 remaining in the escrow account from the sale of the property. The district attorney prosecuting Mr. Daly served a search warrant on the title company that maintained the escrow account to seize the remaining funds on the grounds that they would likely be used to facilitate Mr. Daly's escape.

---

[2] Respondent argues in a cross-appeal at the end of their response brief that Mrs. Daly lacks standing in this case, because "she has no legal interest in the $500,000 bail money." Although the original promissory note on the property bond was executed only by Mr. Daly as the sole owner of the property, at the time the bail was forfeited, the property was owned jointly between Mr. and Mrs. Daly. As a result, the $500,000 in sale proceeds that was used to pay the promissory note was jointly owned between Mr. and Mrs. Daly. Mrs. Daly most certainly has a legal interest in the $500,000 bail money, and had standing to bring the motion to exonerate bail and vacate summary judgment.

2

On April 18, 2005, the District Attorney mailed a "Notice of Bail Forfeiture" to Mr. and Mrs. Daly. The notice of forfeiture read, in relevant part: "Notice is hereby given that the bail in the above-entitled case was ordered forfeited by the Court due to the defendant's failure to appear on the date shown below. Your contractual obligation to pay this property bond will become absolute on the 185th day following the date of forfeiture unless the Court orders the forfeiture set aside and the property bond reinstated." On January 10, 2006, a summary judgment was entered on the bail forfeiture.

After Mr. Daly left the country, his wife did not know where he was until he called her from Ireland. When Mrs. Daly received the call, she immediately reported it to investigators, along with information about Mr. Daly's credit card transactions. A federal warrant was issued for Mr. Daly's arrest on April 20, 2005.

Meanwhile, Mrs. Daly retained an attorney and filed a motion for the release of the remaining funds in the escrow account that were seized. The district attorney opposed the motion, despite the fact that Mr. Daly was in custody at the time. At the hearing on the motion, the trial court denied Mrs. Daly's request for release of the funds.

On October 1, 2005, Mr. Daly was arrested in Uruguay while traveling from Buenos Aires. Despite the fact that Mr. Daly signed a waiver of extradition, Uruguayan authorities required formal extradition proceedings before Mr. Daly could be returned to the United States. Extradition was granted on February 13, 2007, and Mr. Daly was returned to Monterey County on March 7 or 8, 2007. Mr. Daly was sentenced to prison on June 18, 2007.

On March 2, 2011, Mr. and Mrs. Daly filed a motion to exonerate bail and vacate the summary judgment on the ground that the trial court lacked jurisdiction to enter judgment due to faulty notice of the bail forfeiture. On June 24, 2011, the court determined that the notice met the requirements of due process, and denied the motion.

3

Mr. and Mrs. Daly (appellants) assert on appeal that the trial court erred in refusing to grant his motion to exonerate bail and set aside summary judgment.

An order granting or denying a motion to vacate the forfeiture of a bail bond and to declare an exoneration of the bond is appealable. (*People v. Wilcox* (1960) 53 Cal.2d 651, 657 (*Wilcox*).) Ordinarily, we review the order under an abuse of discretion standard, the trial court's discretion subject to constraints imposed by the bail statutory scheme. (*County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, 1491.) " '[W]hen a statute requires a court to exercise its jurisdiction in a particular manner, to follow a particular procedure, or to act subject to certain limitations, an act beyond those limits is in excess of its jurisdiction.' [Citation.] ' "The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections [1305 and 1306] dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." [¶] The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.' [Citation.]" (*Id*. at p. 1492.) Revenue to the state via bail forfeiture should not be a consideration in a bail controversy. (*Wilcox, supra*, 53 Cal.2d at p. 656.)

Here, appellants assert that the court lost jurisdiction to enter the summary judgment, because the notice of forfeiture sent to them was inadequate to satisfy due process standards.

Section 1305, subdivision (b) provides in part: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . ." Proper notice in compliance with this provision is a necessary predicate to collection on the bond. The subdivision

goes on to provide that the surety shall be released of all obligations under the bond if "[t]he clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture" or mails the notice to the wrong address. (§ 1305, subd. (b)(1)-(3).)

Appellants do not dispute that the notice mailed on April 18, 2005 to them complied with the literal terms of the statute. Rather, appellants argue that the notice was ineffective because it failed to recite the statutory provisions under which it was issued and under which relief from forfeiture may be obtained, including the time period within which to do so. Appellants assert that because they are private parties acting as depositors of property to secure his bail, rather than professional bail agents or corporate sureties, they are entitled to more detailed notice of the procedures to seek relief from forfeiture. Moreover, appellants argue that without detail, the notice he received was constitutionally defective, and did not comply with due process.

Appellants rely on two California Court of Appeal bail bond forfeiture decisions *People v. Swink* (1984) 150 Cal.App.3d 1076 (*Swink*), and *Minor v. Municipal Court* (1990) 219 Cal.App.3d 1541 (*Minor*), as well as the principles established by the United States Supreme Court (e.g., *Memphis Light, Gas & Water Division v. Craft* (1978) 436 U.S. 1 (*Craft*)), for the proposition that because they are a private parties who provided bail, rather than a professional bail agent or surety, they is entitled to more detailed notice of the forfeiture procedures.

In *Swink*, an individual deposited cash in lieu of a bail bond. When the defendant failed to appear, the cash bail was forfeited and a notice was sent to Swink, stating, " 'bail will remain forfeited until the defendant appears.' " (*Swink*, 150 Cal.App.3d at p. 1078.) Relying on a long line of Supreme Court decisions, including *Craft, supra,* 436 U.S. 1, the court held that the notice was "constitutionally deficient because it fail[ed] to tell Swink of the statutory procedure to set aside the declaration of forfeiture, including the

5

time period within which to do so." The court pointed out that the notice failed to tell Swink "of the pending action (i.e., the perfection of the forfeiture [citation]), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits. Moreover, it implies the absence of time limitations and the automatic discharge of the forfeiture upon defendant's appearance." (*Id.* at p. 1081, fns. omitted.) The court considered that the risk of erroneous deprivation of the bail depositor's interest in recouping the deposit "is substantial *for those who are not professional sureties or bondsmen.*" (*Id.* at p. 1082, italics added.) Because of the constitutionally deficient notice, the court reversed an order denying Swink's motion for discharge of the forfeiture.

The *Minor* case is similar to *Swink*. In *Minor*, the private individual who posted bail received a notice that stated, " 'Pursuant to Section 1305 of the Penal Code, you are hereby notified of an order of the Court this date forfeiting bail . . . .' " (*Minor*, *supra*, 219 Cal.App.3d at p. 1550.) The court recognized that the notice was distinguishable from the notice in *Swink*, because it "did not *affirmatively* imply an absence of time limits or that forfeiture would automatically be discharged should the defendant appear," but held that the notice nonetheless was constitutionally deficient. "Like the notice in *Swink*, it failed to tell of 'the pending action (i.e., the perfection of the forfeiture . . .), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits.' [Citation.] Reference to section 1305 alone, without any hint that relief from forfeiture was available, let alone the time limits for seeking it, was deficient under any reasonable reading of *Swink*." (*Ibid.*)

*Swink* and *Minor* clearly hold that a notice of bail forfeiture sent to lay individuals that does not contain specific information about the statutory provisions under which the forfeiture was issued and under which relief from forfeiture may be obtained, is constitutionally insufficient to maintain the forfeiture.

6

Appellants certainly qualify as "lay people," and not professional bail agents or corporate sureties.[3] Under *Swink* and *Minor*, they would be entitled to a more detailed notice than what they actually received. Specifically, in order to be constitutionally sound, the notice should have contained reference to the statutory provisions for the forfeiture and for the relief from forfeiture, including the time period within which to do so.

Respondent relies heavily on *City of West Covina v. Perkins* (1999) 525 U.S. 234 (*West Covina*) for the proposition that the minimal notice given to defendant and his wife in this case was sufficient to satisfy due process. In *West Covina*, the court stated, "when law enforcement agents *seize property pursuant to a warrant*, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." (*Id*. at p. 240; emphasis added.) The *West Covina* court went on to state, "[n]o similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The [c]ity need not take other steps to inform him of his options." (*Id*. at p. 241.) Respondent asserts that the "state-law remedies" referred to by the *West Covina* court, are akin to the bail forfeiture notice provisions, and that basic notice, as was provided in this case, was sufficient under *West Covina* to satisfy the law.

The significant problem with respondent's argument is that *West Covina* was not addressing the issue of notice for bail forfeiture; rather, the case involved *a seizure of property pursuant to a search warrant in a criminal investigation*. This is a wholly different set of circumstances than bail forfeiture. First, the seizure of property pursuant

---

[3] Mr. Daly is a physician, and Mrs. Daly is an artist.

to a criminal search warrant is a *temporary deprivation* of the property, and the state has a legal obligation to return the property once there is no longer a lawful right to retain it. Bail forfeiture, on the other hand, *is a permanent loss of property* of the surety. Second, in the seizure of the property under a search warrant, there are no jurisdictional time limits during which a property owner must engage in legal procedures for the return the property. An owner of seized property has time to investigate what remedies are available to him for return of the property. A surety, on the other hand, must act in a very specific manner within 185 days to preserve its rights to the property. Under the bail forfeiture statutory scheme, *there is no time to investigate the remedies available*; hence the specific notice requirements. This is especially true for lay people, such as appellants, who, unlike professional sureties are likely unaware of the specific procedures they need to employ to set aside the forfeiture and protect their property.

Unlike *West Covina*, *Swink* and *Minor* dealt specifically with lay people acting as sureties and the notice required to be given to them in the event of bail forfeiture. Under *Swink* and *Minor*, as lay people, appellants were entitled to notice that contained statutory provisions under which the forfeiture was issued and under which relief from forfeiture could be obtained, including the time period within which to do so. The notice in this case did not contain such information.

Respondent focuses on the fact that Mr. Daly himself is responsible for the forfeiture because he absconded and remained on the lam, precluding him from arguing he was entitled to more detailed notice of the forfeiture. Mr. Daly's "unclean hands," according to respondent, make the notice requirements for lay people inapplicable to him. In addition, respondent points to the fact that Mr. Daly was represented by counsel at all times during the proceedings. Presumably, Mr. Daly's counsel should have informed defendant of his right to exoneration of bail and the actions defendant could take to assert that right.

The purpose of bail is to ensure the appearance of the defendant, not to generate revenue for the state or to punish the surety or the defendant. (See *Wilcox, supra*, 53 Cal.2d at pp. 656-657.) Respondent's insistence that Mr. Daly's flight during trial somehow abrogates the need for constitutionally sound notice reveals its motive to punish defendant.

Moreover, respondent cites no authority for its position that a defendant's conduct determines the extent of notice required. The question of whether notice of the forfeiture in this case was constitutionally sound so as to satisfy due process *is completely unrelated to defendant's actions*. Although it is true that Mr. Daly is responsible for the forfeiture in the first instance because he left the country during trial, he does not lose the right to due process and sufficient notice as a result. The fact that Mr. Daly was represented by counsel also has no impact on the question of whether the notice in this case was constitutionally sound.

Finally, and of particular importance is the fact the Mrs. Daly also had a legal interest in the property forfeited. Even if we found that Mr. Daly's conduct somehow made the forfeiture notice requirements inapplicable to him, as respondent asserts we should do, we cannot overlook the fact that Mrs. Daly was also a lay person who lost her interest in the property when it was forfeited.[4] The bail statutory scheme does not provide for apportionment or severability of forfeited funds to individuals based on conduct. Indeed, the bail scheme is not punitive. (See *Wilcox, supra*, 53 Cal.2d at pp. 656-657.) Mrs. Daly, as a lay person, was entitled to the detailed notice provisions laid out in *Swink* and *Minor,* and the notice provided here violated her due process rights.

We conclude that the failure to give proper notice of the forfeiture of bail on April 18, 2005, resulted in the court losing jurisdiction over the bond. The later

---

[4] Following oral argument in this case, we requested supplemental briefing from the parties on the issue of whether Mrs. Daly's interest in the forfeited bail was serverable.

declaration of forfeiture and summary judgment taken thereon was therefore void. (*People v. Wilshire Ins. Co* (1975) 46 Cal.App.3d 216, 221.) The trial court erred in denying appellants' motion to exonerate the bond and vacate summary judgment.

## DISPOSITION

The order denying the motion to vacate forfeiture and exonerate bond, and the order entering summary judgment on the bond are reversed. The cause is remanded to the trial court with directions to vacate the forfeiture and exonerate the bond. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.