[Civ. No. 17596.   Second Dist., Div. One.   Mar. 13, 1951.]

THE PEOPLE, Respondent, v. FRANK NICCOLI, Defendant; NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY (a Corporation), Appellant.

Vernon L. Ferguson, Samuel L. Rummel and Thomas B. Sawyer for Appellant.

Harold W. Kennedy, County Counsel, and John D. Maharg, Deputy County Counsel, for Respondent.

WHITE, P. J.—The above-named defendant had been indicted in a criminal action and undertaking of bail was filed by appellant National Automobile and Casualty Insurance Company, a corporation. When the cause was called for trial the defendant failed to appear and the court declared forfeited the undertaking of bail. On December 28, 1949, the court made and entered its order denying appellant's motion to set aside said forfeiture (Pen. Code, § 1305). It is from the last-named order of December 28, 1949, refusing to set aside the forfeiture that this appeal is taken.

The record reveals that Michael Cohen and 12 other individuals, including defendant herein, were indicted by the Grand Jury of Los Angeles County on April 12, 1949, for the crime of conspiracy to violate sections 245, 211, and 182, subdivision 5 of the Penal Code. Subsequently, all the defendants who went to trial were acquitted.

So far as shown by the record, defendant Niccoli was last seen alive on the afternoon of September 2, 1949, at the apartment of two ladies, Pat Briar and Caroline Shaw, friends of his. On that occasion he stated to them that he was going to the airport to meet some friends. Pat Briar asked the defendant if she could accompany him. He inquired as to "How long will it take you to get dressed?" According to the testimony of Pat Briar she "started to get dressed, and he looked at his watch and he said, 'Gee, I haven't time, I'll have to go to the airport and I'll call you from the airport after I meet my friends.'" After telling Miss Briar to "Go ahead and keep dressing, and to have Caroline dress—the two of you can have dinner with me and my friends. I will call you from the airport," defendant departed at about 4:30 p. m.

On the evening of September 3, 1949, Miss Da Loune David, a friend of the defendant, was present at a dinner party in the home of Michael Cohen. Thinking it "rather strange" that she had not heard from defendant Niccoli who was in the habit of telephoning her, Miss David made inquiry of others present at the Cohen home as to whether they had talked with defendant Niccoli, and as to whether he was com-

ing to the dinner. Receiving negative answers, the witness acting, as she testified, on "simply a hunch" went to the airport at approximately 3:15 a. m. on the morning of September 4, 1949. She was familiar with defendant Niccoli's automobile, having operated it a number of times. Upon searching the auto park adjacent to the airport the witness came upon the automobile of the defendant. The windows were down and the ignition keys were missing. The witness thereupon telephoned Mr. Cohen and went home. The parking ticket found upon the vehicle by Miss David indicated that it entered the parking lot at 5:53 p. m., September 2, 1949.

On September 21, 1949, a laborer employed by the city of Los Angeles to clean out catch basins in connection with storm drain sewers, found a key ring and keys in a catch basin at 43d Street and Normandie Avenue, some distance from the airport auto park at which the machine was parked. One of the working crew noticed Niccoli's name on the tag attached to the key ring and delivered the keys to the sheriff's office. One of the keys unlocked a piece of luggage found in Niccoli's apartment, another unlocked the ignition of his automobile and opened the door thereof, while another key unlocked the glove compartment. At the place where they were found the keys were not visible from the street until the cover was pulled off the catch basin. They were three or four feet below the surface, and it is a reasonable assumption, as urged by appellant, that the keys did not get into the catch basin by accident but were placed there for concealment.

There was testimony that defendant Niccoli had been in Los Angeles since January, 1949; that he was devoted to his mother who resided with her daughter in Cleveland, Ohio. He regularly sent $60 a month to his mother, the last check for this amount having been received by her some two weeks before his disappearance. He telephoned his mother on four occasions after his arrival in Los Angeles and was much concerned about his mother's health. There was evidence that both to his family as well as to friends defendant Niccoli had stated a lack of fear on his part as to the outcome of his trial under the aforesaid indictment, "that he was not worried too much about it." There was evidence that during the pendency of the indictment, Niccoli was present, with others, as a guest of Michael Cohen at a cafe located in unincorporated territory commonly known as the "county strip," which "strip" adjoined the city of Los Angeles, upon which occa-

sion the party was attacked from ambush. In this attack, one of Cohen's guests, named Neddie Herbert, was killed, while Cohen and other members of the party received serious gunshot wounds. There was testimony that Niccoli was very fond of Cohen and that the latter was a guarantor upon the former's $50,000 bail bond. There was also testimony that Niccoli intended to go into the cigarette business in Los Angeles and that because of his own lack of finances was attempting to raise money to finance the business.

It is undisputed in the evidence that defendant Niccoli was in impecunious circumstances and that the $60 he was sending his mother each month was a drain upon him. That he borrowed money from his friends and associates from time to time. That he was continually complaining about being "broke." The record reflects that Niccoli was indebted to a finance company in Cleveland, Ohio, in connection with the purchase of his automobile; that his payments thereon amounted to $92.48 per month. That on September 6, 1949, some four days after the defendant's disappearance, the finance company received from Niccoli an installment payment of $92.48. While no letter of transmittal accompanied said remittance, it was established that the money order in question was obtained by defendant Niccoli.

It was also established that on September 7, 1949, defendant Niccoli's apartment was found to be in good order. A jar of pennies was sitting on a cabinet, razor blades were in the bathroom cabinet as well as his shaving cream, tooth paste and a toothbrush. Wearing apparel in the way of suits, coats, shoes, underwear, ties and handkerchiefs were found in the apartment. A box of money containing silver amounting to $65.20 was found in a hatbox.

Without narrating in detail the efforts made to locate defendant Niccoli following his disappearance, suffice it to say that an intensive search for him was made by law enforcement agencies, friends, and appellant insurance company, all to no avail.

At the hearing in the superior court the People offered no evidence to prove that defendant Niccoli was alive subsequent to September 2, 1949, and relied solely upon the premise that the burden of proving death was upon appellant and that such burden had not been met.

The sole ground of this appeal is that the evidence produced in the superior court in support of the motion to set

aside the forfeiture of the bail bond conclusively proved that the defendant Niccoli was dead at the time the order of forfeiture was made; that the court below abused the discretion vested in it under the provisions of section 1305 of the Penal Code in refusing to set aside its order forfeiting the defendant's undertaking of bail.

The provisions of the pertinent Penal Code section just cited are as follows:

"If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court is lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited. *But if at any time within 90 days after such entry in the minutes, the defendant and his bail appear, or if the defendant is dead and his bail appear, and satisfactorily excuse the defendant's neglect and show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just.*" (Emphasis added.)

It is conceded that orders like the present, in legal parlance, rest very much in the discretion of the court below, and will not be disturbed by this court unless we are satisfied that the order is so plainly erroneous as to amount to an abuse of discretion.

The correct principle for the exercise of sound discretion is set forth in the early case of *Bailey* v. *Taaffe*, 29 Cal. 422, 424, and thereafter quoted with approval in the cases of *Demens* v. *Huene*, 89 Cal.App. 748, 753 [265 P. 389], and *Atkinson* v. *Atkinson*, 35 Cal.App.2d 705, 708 [96 P.2d 824].

In the case first cited it was said, "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates."

A disputable presumption exists that a person who is absent or unheard of for seven years is dead (Code Civ. Proc., § 1963, subd. 26). ■ Conversely, as recognized by the parties to this action, a person unheard of for a period of time is presumed to be alive until the expiration of seven years. Therefore, in the present case, if it be doubted whether the evidence offered in the superior court, when examined under those rules of law by which judges are guided to a conclusion, was sufficient to "quicken the time" so as to raise the presumption of death of defendant Niccoli before the expiration of the statutory period fixed by subdivision 26 of section 1963 of the Code of Civil Procedure, the order of the court below will not be disturbed.

■ The burden of proof herein was upon appellant to establish by competent evidence a satisfactory excuse for the defendant Niccoli's failure to appear for trial. Recognizing that obligation, appellant offered evidence to prove that the defendant was dead. ■ The proof offered consisted wholly of circumstantial evidence. ■ The presumption of life for seven years after one's disappearance is not exclusive. The presumption is rebuttable and may be rebutted by evidence, direct or circumstantial, which establishes to the satisfaction of the court that the disappearance, except because of death, was without motive and inconsistent with the very nature of the person (*Lesser* v. *New York Life Ins. Co.*, 53 Cal.App. 236, 239 [200 P. 22]; *Western Grain etc. Co.* v. *Pillsbury,* 173 Cal. 135, 139 [159 P. 423]).

■ In the Lesser case, *supra,* the court observes "however, if the person at the time he was last seen was a fugitive from justice, was a bankrupt, or from other causes it would be improbable that he would be heard from even though alive, then no inference of death will be drawn. Such was the conclusion of the court in (citing cases)."

■ Bearing in mind the rule enunciated in the Lesser case, *supra,* that where a motive exists or doubt as to the reason for disappearance exists, the presumption of continued existence will not be shortened, we find in the record testimony produced by appellant that defendant Niccoli had been convicted of a crime in another jurisdiction; that he had been indicted for a felony in California; that he had no regular employment; that he was "continually complaining about being broke, he didn't have money, wasn't doing anything," although possessed of apparent means of obtaining money to

meet pressing financial demands upon him by borrowing from friends. The record further reflects that the labels had been removed from his clothing; that his automobile was without license plates; that defendant was a member of a party of friends of Michael Cohen upon whom a murderous assault was made, resulting in the killing of one member of the party and the wounding of Cohen and two other guests.

However, appellant's contentions are not without merit. The record presents one of those cases that could reasonably have been decided either way. Indeed, the finding of Niccoli's keys in the location where they were discovered is difficult to explain on any basis other than that contended for by appellant. But, as noted above, the question of fact was for the trial court and even though there is room for a difference of opinion, the judgment of an appellate tribunal cannot be substituted in such circumstances for the conclusion reached by the duly constituted arbiter of the facts.

In connection with the appellant's contention that ''the uncontradicted evidence contained in the record of this case so strongly points to the fact of death that, no other conclusion can logically be reached,'' it must be remembered that there are exceptions to the general rule that the uncontradicted testimony of a witness to a particular fact is binding on the court (*People* v. *Kersten,* 60 Cal.App.2d 624, 626 [141 P.2d 512]). In the case now under consideration we find that the witness Michael Cohen was a guarantor on defendant Niccoli's bail bond for $50,000. Other witnesses included the mother and sister of defendant, employees of the aforesaid Cohen, friends of the defendant, one of whom had been convicted of a felony. The court was entitled to weigh their testimony in the light that they could have had a direct or indirect interest in the determination of the question as to defendant's status as living or dead.

The only other witnesses were police officers who testified as to the failure to locate the defendant; two acquaintances who testified that the defendant broke an appointment with them on September 1, 1949; persons who testified that the defendant had sent money orders and that the same had been received; employees of the city of Los Angeles who testified as to the finding of the automobile keys; and a special agent of the Pacific Telephone and Telegraph Company who supplied evidence as to a telephone call made by the defendant under an assumed name.

For the foregoing reasons we are satisfied that the order appealed from is not so plainly erroneous as to amount to an abuse of discretion, and should, therefore, be affirmed. It is so ordered.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied April 9, 1951, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1951.