**In re JAMES MERRILLS RICE, Deceased**

**v.**

**KATHLEEN M. CLEMENTS, Petitioner**

Family No. 5/1989

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

June 28, 1991

DOUGLAS A. BRADY, ESQ. (BRADY, HART & JACOBS), Christiansted, St. Croix, V.I., *for petitioner*

CABRET, *Judge*

## MEMORANDUM OPINION

This matter is before the Court on the Petition of Kathleen M. Clements (hereafter referred to as "Petitioner") for an order declaring her father, James Merrills Rice, dead after his unexplained disappearance and continued absence since July, 1986. For the reasons hereafter stated, the Court will grant the Petition.

## FACTS

James Merrills Rice, a California retiree, moved to St. Croix from the San Francisco Bay area in 1984. He purchased a home and a large piece of property in Estate Salt River, St. Croix, and resided there with his second wife, Astarte Davis Rice. It was his intention to develop some of his real estate, and he formed a corporation, Flaminbeau Properties, Inc., to further that goal. Mr. Rice owned a 38 foot boat, called the "Fish Eagle", which according to the Petitioner he placed great pride and joy in. Mr. Rice also retained some personal property in California, namely, a small plane, and a Lincoln Continental automobile. In Texas, Mr. Rice maintained an account at Guardian Savings Bank with a balance at the time of his disappearance of $200,000. He also maintained an account at the Chase Manhattan Bank here on St. Croix, in which he usually deposited his social security checks.

Petitioner states that Mr. Rice had a very close relationship with her and the rest of his family.[1] She spoke and wrote to him often and he communicated frequently with his brother and sisters in Washington and Oregon. It was very unusual for Mr. Rice to go for any significant period without contacting any of his family. Petitioner last spoke to her father on July 20, 1986, at which time he stated that he was scheduled to arrive in California on July 29, 1986, in order to have surgery on his shoulder, and also to visit his family. He never arrived as scheduled.

Over the next few days Petitioner conducted an exhaustive search, by telephone, for her father without any success. She even contacted the airlines to see if Mr. Rice had been on any flight, but they refused to release any information, except to federal authorities. On August 10, 1986, she mailed a social security check to her father along with a letter expressing her concern and asking him to contact her immediately.[2] There was no reply to her letter.

On August 16, 1986, Petitioner's daughter-in-law was married, and Mr. Rice failed to show for the wedding. The following day, on August 17, Astarte Rice spoke with Petitioner and gave Petitioner a number

---

[1] By "the rest of his family" the Court is referring to Mr. Rice's brother and sisters, all of whom reside in Oregon and Washington.

[2] Mr. Rice's social security checks were sent to his daughter in California. She would then mail the checks to Mr. Rice in St. Croix.

of inconsistent statements about her father's disappearance.[3] For the next few weeks Petitioner called airports, morgues, hospitals, and convalescent hospitals in the Virgin Islands, the surrounding islands, and Florida but none had any record of her father. On August 26, 1986, Mr. Rice failed to show up or call for his daughter's birthday, an event, she asserts, he would not have missed were he alive. Thereafter, Petitioner filed a missing persons report with the Federal Bureau of Investigation (hereafter referred to as "FBI") and the Virgin Islands Police Department. She also retained the services of Dennis Sheraw, a private investigator on St. Croix. Mr. Sheraw's background includes years of experience in the investigative field as a counter-intelligence agent with the United States Army Intelligence Corps, and also as a special agent with the FBI.

According to the testimony of Mr. Sheraw, full page ads were taken out with several local and national news agencies, including the St. Croix Avis and the California Contra Costa Times, offering a reward for information concerning the disappearance of Mr. Rice. A nationally syndicated television program, "A Current Affair", also ran a detailed ten-minute segment into his disappearance.

Mr. Sheraw stated that the purpose of his investigation was two-fold. One part of the investigation was to attempt to locate Mr. Rice or determine what happened to him, and the other part was to determine whether there were any existing circumstances which would provide cause or motivation for Mr. Rice to disappear. Despite his in-depth investigation and the offer of a $10,000 reward for information leading to Mr. Rice, no leads were turned up as to Mr. Rice's whereabouts, nor could he find any justifiable cause for Mr. Rice to disappear. As a result of his investigations and the information received from law enforcement authorities, Mr. Sheraw concluded that James Rice was a very dependable man, that he was very close to the Petitioner and would not go for any long period of time without contacting her, and that there is no reasonable explanation for his disappearance. Mr. Sheraw further testified that "I have no question as to whether he [James Merrills] is alive or hiding. I am convinced through my professional experience, without question in my mind, that Mr. Rice is no longer living. And I am also convinced in my professional opinion that he more than likely suffered from foul-play in his disappearance."

---

[3] Astarte and her son, Noble are presently under indictment on charges relating to the misappropriation of Mr. Rice's property.

## DISCUSSION

At common law a person was presumed dead if absent from his place of abode and unheard from for a period of seven years. 22A Am. Jur. 2d "Death" § 551 (1988). Many states have codified the seven-year common law rule, but in this jurisdiction a person is presumed alive unless the unexplained absence lasts for a period of ten or more years, at which time the presumption that the absent person has died intestate will be entertained:

> In case of the absence from the jurisdiction of any person owning property therein, for a period of ten years or more, during which time there has been no knowledge or means of knowledge of his whereabouts afforded by him or obtainable by the exercise of reasonable diligence on the part of the heirs, beneficiaries, or other parties in interest of his estate, such heir, beneficiary, or other interested party may institute a proceeding for the administration of the estate of such absentee owner, on the presumption that the latter had died intestate.

15 V.I.C. § 168 (1964).

Thus, under our statute, and with some variance in other states as well,[4] a presumption of death arises where: (1) A person is absent for at least ten years, (2) those persons with whom he would likely communicate have not heard anything from him, and (3) a reasonably diligent search has been made without obtaining information that he is alive. See Estate of Morrison v. Rosewell, 92 Ill. 2d 207, 441 N.E.2d 68 (1982).

Our statute speaks only to a presumption of death if a person is absent or missing for at least ten years. Where a person is unexplainably absent from this jurisdiction for a period of less than ten years, our statute is silent. Therefore, in order to determine whether death can be established within the ten year period, we must look to laws of other jurisdictions for guidance. One can look no higher than to the laws sanctioned by the highest court of the land. In 1902, the Supreme Court of the United States fully recognized that a person can be declared dead within the seven year period, when it held that it was not error for a trial judge to instruct the jury as follows:

---

[4] The only real variance occurs in the amount of time necessary to raise the presumption. For instance, in states that have codified the common law rule, only seven years of unexplained absence is necessary for the presumption of death to arise. See 22A Am. Jur. 2d, supra.

While death may be presumed from the absence, for seven years, of one not heard from, where news from him, if living, would probably have been had, yet this period of seven years during which the presumption of continued life runs, and at the end of which it is presumed that life ceases, may be shortened by proof of such facts and circumstances connected with the disappearance of the person whose life is the subject of inquiry, and circumstances connected with his habits and customs of life, as, submitted to the test of reason and experience, would show to your satisfaction by a preponderance of the evidence that the person is dead.

Fidelity Mutual Life Association v. Mettler, 185 U.S. 308, 371 (1902).

Lower courts have naturally reached the same conclusion. In De-Sena v. Prudential Insurance Company of America, 117 N.J. Super. 235, 284 A.2d 363, 366 (1971), the Court noted that the law generally presumes continuation of life until seven years have passed since the person was last heard from, but where the missing person has been absent for less than seven years, "upon proof of circumstances raising a counter presumption, his death may be found within the seven-year period." (Citation omitted).

Likewise, in People v. Niccoli, 102 Cal. App. 2d 814, 228 P.2d 827, 830–31 (1951), the Court explained that a person unheard of for a period of time is presumed to be alive until the expiration of seven years, but "[t]he presumption of life for seven years after one's disappearance is not exclusive. The presumption is rebuttable and may be rebutted by evidence, direct or circumstantial, which establishes to the satisfaction of the court that the disappearance, except because of death, was without motive and inconsistent with the very nature of the person."

Finally, in 25A C.J.S. "Death" § 9, 568 (1966), it is said that:

Where a person has disappeared it is not always necessary to wait for seven years before attempting to prove that he is dead; death may be proved by showing facts from which a reasonable inference would lead to that conclusion. (Footnotes omitted).

■ Having shown there is authority stating that an absent or missing person may be proven dead within the statutory period, the question now becomes what prerequisites are necessary to do so. Certainly, in rebutting the presumption of life, it must be shown that a person has been continuously absent for some period of time less than the requisite statutory period. The other prerequisites are the

157

same as those which must be shown to exist when raising the presumption of death in accordance with the statute. That is, it must be shown that the persons with whom the absentee is most likely to be in contact with have not heard from him, and that a reasonably diligent search has been made without obtaining information that he is alive. In addition to those elements, most authorities require that proof be made that the person's absence is without reasonable explanation. 22A Am. Jur. 2d "Death" § 558 (1988); 25A C.J.S., supra, § 6. Finally, proof that a person was subjected to a specific peril indicative of death at the time of his disappearance, although not a required element, may be significant in proving death before the expiration of the statutory period. 22A Am. Jur. 2d, supra, § 565; See Scharwenka v. Cryogenics Management, Inc., 163 N.J. Super. 16, 394 A.2d 137 (1978).

As to the true difference between proving a person dead within the statutory period as opposed to after the statutory period, in 22A Am. Jur. 2d, supra, § 551 at 528, it is stated that:

> The difference between proving a person dead who has been missing less than 7 years rather than more than 7 years lies in the degree of proof required to establish the death. In the latter case there is a presumption of death which shifts the burden of proof to the party claiming life, while in the former case, the party claiming death must carry the full burden of proving death, overcoming the presumption of life. (Footnote omitted).

■ Therefore, the only real difference between proving a person dead before the expiration of the statutory period, as opposed to after expiration of the statutory period, lies in the degree of proof. In this jurisdiction, when proving a person dead before the required ten year period, there must be proof of circumstances sufficient to rebut the presumption of continued life, whereas after the ten year period has passed, the presumption of death arises as a matter of law.

A sterling example of the type of proof required to rebut the presumption of life and prove a person dead within the statutory period is presented in Matter of Estate of Dawson, 346 So.2d 386 (Ala. 1977). In that case the petitioner sought to have an absentee, Mrs. Dawson, declared dead before the passage of the required seven year period of continuous absence. The burden was on the petitioner seeking to prove death in less than seven years to rebut the presumption of life and prove by a preponderance of the evidence that the missing person was dead. The Court summarized the evidence as

follows: Mrs. Dawson, the absentee, was dependable in the operation of her business; she had a good relationship with her sisters; she had recently undergone surgery and had serious health problems requiring daily care; her health problems would eventually terminate her life prematurely; she looked forward to a time in the near future when she could spend all of her time at her lake house; a diligent search was made to find her; no one had heard from her since September 23, 1974; the night before her disappearance she was seen in a lounge with a man named Knowles; and Knowles confessed to murdering a beautician named Ann whom he met in a low class bar. Based on this evidence, the Court found that the presumption of life had been rebutted, and death proved by a preponderance of the evidence.

In the case at bar, death is asserted within the statutory ten year period, therefore, the Petitioner must overcome the presumption of life and prove death by a preponderance of the evidence. Under the facts of this case, this Court has no difficulty in finding that the Petitioner has successfully carried her burden. There is simply no rational explanation for Mr. Rice's disappearance. Mr. Rice had an extremely close relationship with Petitioner as well as with his brother and sisters, and it would be totally inconsistent with his character that he, being alive, would fail to communicate with any of those persons.

Generally, a person who intends to leave his place of abode for a long period of time will leave his business affairs in order or in some manner consistent with an intention to be absent for an extended period. Such a person would make arrangements to have his property taken care of in his absence, or to pay debts as they become due. He would certainly need to make arrangements to receive money from his regular source of income. Not so in this case. Mr. Rice was substantially invested in a healthy real estate market. He was in the process of developing real property for resale, yet he left his project in midstream. At the time of his disappearance, he had no significant financial liabilities that would motivate him to flee. Most telling is the fact that he left all his sources of income—namely his bank accounts, investments, and social security checks—completely untouched.

Mr. Rice's physical condition is also significant. While in generally good health, he did have problems which required surgery to his shoulder. He arranged to have surgery in California, and was scheduled to arrive there on July 29, 1986. Mr. Rice never arrived as

159

scheduled, and there is no rational explanation as to why he would fail to follow up on his medical plans.

Moreover, an extraordinarily diligent search was made for Mr. Rice. Investigations into his disappearance were conducted by the private investigating firm of Dennis Sheraw, the FBI and the Virgin Islands Police Department, all to no avail. Rewards have been offered and numerous stories on Mr. Rice's disappearance have appeared in the news media in the Virgin Islands and California. A nationally syndicated television program, "A Current Affair", ran a ten-minute segment into Mr. Rice's disappearance. In addition, literally hundreds of people were contacted and interviewed without any reliable information leading to Mr. Rice or explaining his disappearance.

█ The uncontroverted evidence presented by Petitioner in this case was sufficient to rebut the presumption of life, and prove death by a preponderance of the evidence. Clearly, no one can explain why a living James Rice would desert his family, and abandon his property and all sources of income. In finding that Petitioner has successfully carried her burden of proving death, the Court also finds that Petitioner has presented sufficient proof to show that death is likely to have occurred sometime between July 20, 1986, the day James Rice was last heard from, and July 29, 1986, the day on which Mr. Rice was scheduled to arrive in California. The Court's decision however, is not intended to express an opinion concerning the manner of James Rice's death, or whether there was in fact "foul play" involved. Those concerns are the subject of ongoing investigations by federal and local authorities.

### CONCLUSION

For the above-stated reasons, the Court concludes that James Merrills Rice, is dead, and finds that his death occurred between July 20, 1986, the day Mr. Rice was last heard from, and July 29, 1986, the day when Mr. Rice was scheduled to arrive in California for surgery.

### DECLARATORY JUDGMENT

UPON THE Petition of Kathleen M. Clements for an order declaring her father, James Merrills Rice, dead after his unexplained disappearance and continued absence since July, 1986, and in accordance with the Memorandum Opinion issued herewith, it is hereby

160

ORDERED and DETERMINED that Petitioner's father, James Merrills Rice, is dead; and it is

FURTHER ORDERED and DETERMINED that James Merrills Rice died between July 20, 1986 and July 29, 1986.

SO ORDERED this 28th day of June, 1991.