[Nos. D012961, D012453. Fourth Dist., Div. One. Jan. 30, 1992.]

Conservatorship of the Estate of LEWIS MICHAEL GEIGER.
GERALD M. GEIGER, as Conservator, etc., Petitioner and Appellant, v.
UNITED STATES DEPARTMENT OF JUSTICE, Objector and
Respondent;
BIRGIT CARLSEN GEIGER, Intervener and Appellant.

COUNSEL

Howard D. Finkelstein and Mark L. Knutson for Petitioner and Appellant.

Birgit Carlsen Geiger, in pro. per., for Intervener and Appellant.

William Braniff, United States Attorney, John R. Neece and Beth L. Levine, Assistant United States Attorneys, for Objector and Respondent.

OPINION

HUFFMAN, J.—Petitioner/conservator Gerald M. Geiger and intervener Birgit Carlsen Geiger appeal from the order of the probate court denying the petition filed under Probate Code[1] section 12401 to presume and declare as dead Lewis Michael Geiger (Michael) after he had not been seen or heard from for a continuous period of five years.[2]

Gerald and Birgit, Michael's wife at the time of his disappearance, challenge the probate court's interpretation of section 12401 and contend its findings are not supported by substantial evidence. Birgit also claims the court erred in not setting the date of Michael's death as December 4, 1983, the date he disappeared. As we explain, we affirm the probate court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

One day before Michael was to be sentenced in federal court for cocaine possession and distribution, his boat was found abandoned four miles off the shore of Huntington Beach, California, with his wallet and spatters of human blood on board. His car and boat trailer were found near the Huntington Beach dock.

When Michael failed to appear for sentencing on December 5, 1983, the federal district court judge declared his bond forfeited and issued a bench warrant for his arrest. Michael's $150,000 bail bond had been posted by his brother Gerald and Gerald's wife, secured by their residence in Pennsylvania.

---

[1] All statutory references are to the Probate Code unless otherwise specified.

[2] Section 12401 states: "In proceedings under this part, a person who has not been seen or heard from for a continuous period of five years by those who are likely to have seen or heard from that person, and whose absence is not satisfactorily explained after diligent search or inquiry, is presumed to be dead. The person's death is presumed to have occurred at the end of the period unless there is sufficient evidence to establish that death occurred earlier."

After the United States government, through its Attorney General's Office (U.S. Attorney), filed for judgment on default of the forfeited bond, Michael's brother Gerald was appointed conservator of Michael's estate in state court. Gerald then filed a countermotion in federal court under his and his wife's names as sureties and as conservator of Michael's estate to set aside the forfeiture.

On May 21, 1984, the federal district court denied the motion for relief from bail bond forfeiture in U.S.A. v. Louis (*sic*) Michael Geiger, case No. 83-0428-K, on the ground the court was unconvinced Michael had perished during the December 1983 boating trip.

Back in state probate court, on October 19, 1989, Gerald, as conservator, filed a petition for an order under section 12401 to determine Michael missing and presumed dead, to issue a death certificate, to terminate the conservatorship, to approve a final accounting in the conservatorship, and to open administration for probate of Michael's estate and release any remaining conservatorship funds into such estate. Birgit received permission as an interested party to intervene in the petition and asked the court to set the date of death as December 4, 1983.

At oral argument on the matter, without opposition, the court expressed concern the U.S. Attorney and the insurance companies that would be paying proceeds to Gerald and possibly Birgit had not received notice of the petition and hearing. Gerald agreed the U.S. Attorney and the insurance companies were interested parties and they should have received notice. The court took the matter under submission with the understanding it would notice the interested parties and then rule on the motion. The court stated it would probably "follow the statute and find the guy dead . . ." if it received no objections.

The U.S. Attorney, however, did file objections to the petition. The probate court then augmented its record to include a copy of the reporter's transcript of proceedings before the federal court on the bail forfeiture matter on May 21, 1984. After review of all documents and the superior court file in this case, the court sent the parties its "Memorandum Decision," containing the following findings, observations and conclusions:

"(a) [Michael] has not been seen or heard from for a continuous period of five years (commencing 12/4/83 and continuing to the present) by those who are likely to have seen or heard from that person. This satisfies the first prong of . . . § 12401.

"(b) A diligent search or inquiry as to his whereabouts has been made. [Michael], an indicted bail jumper and convicted drug possessor and distributor, had numerous law enforcement officials and even his own family, one

of whom was a surety on an appearance bond in the federal court, conduct extensive searches and inquiries into his whereabouts, all to no avail. The third prong of . . . § 12401 is satisfied.

"(c)   [Michael's] absence *is* satisfactorily explained. Stated differently, he staged his death and fled. This finding is supported by these facts:

"(1)   In 1977, [Michael], after being arrested in Lebanon on drug charges, escaped from jail and made his way to Denmark. He stayed underground for two years before surrendering himself. He was thereafter placed on probation.

"(2)   There was a probation violation warrant outstanding when [Michael] was arrested on the federal cocaine charges.

"(3)   [Michael] pled guilty to the cocaine charges and was free on bond pending sentencing set for 12/5/83.

"(4)   Two or three days before his disappearance, [Michael] found out that the U.S. Probation Department was recommending a seven-year prison sentence. Further, [he] knew that the U.S. Attorney's Office was going to recommend either no bail or an increase in bail at the time of the scheduled sentencing.

"(5)   On 12/4/83, the day before his sentencing, [Michael's] fishing boat was found abandoned four miles offshore. [His] identification and spatters of human blood were found on board. His car and boat trailer were found on the dock. A few weeks earlier, [he] suffered a wound while fishing, requiring several stitches. (A reasonable inference is the wound occurred on the same boat and that may account for the traces of blood found.)

"(6)   [Michael's] 'fishing trip' out of Orange County violated a condition of his bond—that he not leave San Diego County.

"(7)   The evidence in the cocaine conspiracy case suggests [Michael] was a 'large cocaine dealer'.

"(8)   At the hearing on the Motion of The Sureties (to have them exonerated), [the district court judge] observed:

" 'The circumstances of his disappearance may, in fact, be indicative of the fact that he has been murdered or died. But realistically, the odds against that are enormous considering his prior escape, also the large-scale nature of

this offense, and the circumstances, particularly the timing of this disappearance with the sentence that was scheduled, all suggest he fled.' (Case No. 83-0428-K, transcript, p. 15).

"[Michael] is a survivor; it is highly unlikely he died, or was the subject of foul play, one day before criminal sentencing. The facts of [Michael's] disappearance are strikingly similar to those in *U.S.* v. *Frias Ramirez*[ ] [(9th Cir. 1982)] 670 F.2d 849 [ ]. Further, the following language from *People* v. *Niccoli*[ ] [(1952)] 102 Cal.App.2d 814, 819, is instructive:

" 'If the person at the time he was last seen was a fugitive from justice, was bankrupt, or from other causes it would be improbable that he would be heard from even though alive, then no inference of death will be drawn.'

"While one day short of being a fugitive from justice at the date of his disappearance, it appears to this Court improbable that [Michael] would be heard from again if alive. The second prong of . . . § 12401 has *not* been satisfied." (Original italics.)

The probate court then denied the petition to determine that Michael was dead and resolved the other issues before the court. It directed Gerald's attorney to prepare the appropriate order reflecting its rulings and findings.

On July 16, 1990, the formal "COURT FINDINGS AND CONCLUSIONS OF LAW AND FINAL ORDER AFTER HEARING" were signed by the court and filed. On August 29, 1990, Gerald, as conservator, filed a timely notice of appeal from the denial of his petition.[3]

## DISCUSSION

The major issue of whether the probate court properly applied section 12401 to the undisputed facts in this case is a mixed bag of legal and factual questions. ■ Normally we are bound by the lower court's determination of facts based upon substantial evidence and reasonable inferences drawn from those facts. (*Hicks* v. *Reis* (1943) 21 Cal.2d 654, 660 [134 P.2d 788].) If different inferences can be drawn from undisputed facts, we must accept the lower court's inference. (*Ibid.*) However, if the court's inference is rebutted by clear, positive and uncontradicted evidence it may not be supported. (*Ibid.*)

---

[3]Gerald, as conservator, originally prematurely appealed from the court's memorandum opinion denying his petition. Before the formal order was filed and properly appealed from, a default in the premature appeal was entered and Birgit was granted permission to intervene to vacate the default. That appeal, case No. D012453, has been consolidated with the present appeal in which the U.S. Attorney has also been granted permission to intervene as the "Real Party in Interest."

"Where the question is one of law derived from undisputed facts, the appeal court is not bound by the trial court's finding on an ultimate issue. [Citation.] And what is 'reasonable' on undisputed facts is a question of law. [Citations.]" (*Fullerton Union High School Dist.* v. *Riles* (1983) 139 Cal.App.3d 369, 383 [188 Cal.Rptr. 897].) Inasmuch as legal conclusions are only valid if supported by a trial court's findings of fact, which in turn must be supported by the evidence before the court, we review both in this case. (See *Ruggiero* v. *Los Angeles City Unified Sch. Dist.* (1973) 33 Cal.App.3d 970, 973 [109 Cal.Rptr. 417].)

The probate court here determined section 12401 contained three prerequisites for the presumption of death to apply: (1) that a person not be seen or heard from for a continuous period of five years by those persons who would likely see or hear from the missing person; (2) that diligent search for or inquiry about the whereabouts of the missing person be shown; and (3) that the absence of the missing person cannot be satisfactorily explained. The court found prerequisites (1) and (2) had been shown, but not (3).

Gerald and Birgit challenge the court's finding there was a satisfactory explanation for Michael's disappearance based on the evidence before it.[4] They specifically argue the court failed to properly apply the "indispensable" presumption of section 12401 that after diligent search and inquiry, Michael had been missing for over five years without being seen or heard from by those who would normally see or hear from him (his brother, his wife, and his fiancée, who is not a party to this action). Because the court failed to apply the presumption, Gerald and Birgit argue the court improperly shifted to them the burden of rebutting the federal court's finding that Michael was still alive. Gerald and Birgit misconstrue the section 12401 presumption of death and its application.

The case law on which they rely as to the evidentiary value of the presumption of death and its application concerning the burden of proof was

---

[4]Gerald's opening brief contains a footnote questioning the appropriateness of the evidence submitted below by the U.S. Attorney on the ground he (Gerald) was not provided an opportunity to introduce all the documents referred to in the transcript of the hearing in federal court or any other documents before the federal court. Gerald, however, agreed to the procedure the court suggested to get the views of the U.S. Attorney and did not object to the inclusion of the U.S. Attorney's response to the court's letter. Gerald did not bring a motion to reconsider, or object to the court's findings before the formal order of such findings was entered in the record. Under such circumstances, we fail to see a cognizable issue on this point for appeal.

Nor do we see one in the issues of justiciable controversy and standing of the United States government raised by Gerald for the first time at oral argument before this court. As noted earlier, we granted the U.S. Attorney's motion to intervene in this case based on sufficient interests of the United States government because of existing civil judgments and criminal actions against (Michael).

decided before the enactment of the California Evidence Code in 1966. Before that time, presumptions were considered as a form of indirect evidence which could independently support a verdict. (*Smellie* v. *Southern Pacific Co.* (1931) 212 Cal. 540, 549 [299 P. 529]; 1 Witkin, Cal. Evidence (3d ed. 1986) §§ 170-173, pp. 144-148.) The Evidence Code, however, negated this line of cases. It specifically provides that "[a] presumption is not evidence." (Evid. Code, § 600, subd. (a).) Rather a presumption is "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action." (*Ibid.*)

Evidence Code section 605 provides:

"A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied, such as the policy in favor of establishment of a parent and child relationship, the validity of marriage, the stability of titles to property, or the security of those who entrust themselves or their property to the administration of others."

As clarified in the Law Revision Commission comment to Evidence Code section 605:

". . . the presumption of death from [five] years' absence (Section 667) exists in part to facilitate the disposition of actions by supplying a rule of thumb to govern certain cases in which there is likely to be no direct evidence of the presumed fact. But the policy in favor of distributing estates, of settling titles, and of permitting life to proceed normally at some time prior to the expiration of the absentee's normal life expectancy (perhaps 30 or 40 years) that underlies the presumption indicates that it should be a presumption affecting the burden of proof. [¶] . . . [T]he fact that the presumption of death from [five] years' absence may conflict directly with the logical inference that life continues for its normal expectancy is an indication that the presumption is based on public policy and, hence, affects the burden of proof."

Evidence Code section 606 provides that "[t]he effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." However, before the effect of the presumption arises, the party asserting the presumption has the burden of producing evidence to show the presumption applies.

For example, before the general presumption of death under a comparable section, Evidence Code section 667, becomes operative, it is presumed the

life of the missing person continues until after five years of not being heard from have passed. (See *People* v. *Niccoli* (1951) 102 Cal.App.2d 814, 819 [228 P.2d 827].) However, an inference of death before the end of the five years may be made if there is evidence the missing person was subject to some specific peril or illness, or other circumstances. (See *Pollack* v. *Hamm* (1970) 3 Cal.3d 264, 269 [90 Cal.Rptr. 181, 475 P.2d 213]; *Estate of Christin* (1933) 128 Cal.App. 625, 631 [17 P.2d 1068].) But if there is any doubt in the evidence concerning the reason for the disappearance or its motive, the presumption of continued life remains. (See *People* v. *Niccoli, supra,* 102 Cal.App.2d at p. 819.)

In *People* v. *Niccoli, supra,* 102 Cal.App.2d 814, a case similar to this one, where the issue was whether a surety on a bail bond should be relieved of bail forfeiture by a showing of a defendant's death, the court denied application of the presumption of death under section 1351, the precursor to section 12401,[5] based on a finding the circumstances showed a good reason or motive for the missing person's flight. There the evidence showed the defendant had been indicted, was penniless, had removed labels from clothing, had taken license plates from his car, and was a member of a group against whom murderous assaults had been made. (*Ibid.*)

■ Here, section 12401, like section 1351, is a presumption created by the Legislature. Although not contained in the Evidence Code, it is treated under the same rules of interpretation for presumptions as set out in that code. (See Witkin, *op. cit. supra,* §§ 220-221, pp. 174-177.) Thus, like Evidence Code section 667, it is a presumption affecting the burden of proof. Once its prerequisites are proved, more likely than not by the proponent of its application, the burden of proof shifts to the opposing party to rebut the presumption.

■ Here, at the probate hearing on the petition to invoke the presumption of death, the court stated it would tentatively rule in favor of Gerald, the proponent of the presumption's application and declare Michael dead. It, however, with Gerald's and Birgit's full knowledge, solicited the views on the merits of the petition from the U.S. Attorney's office and the affected insurance companies. Although there was no response from the insurance companies, the U.S. Attorney opposed the petition, presenting the court with evidence of the circumstances surrounding Michael's background and the incident in which he disappeared. The court found such evidence rebutted

---

[5]Section 12401 was added by the 1987 Legislature. (Stats. 1987, ch. 923, § 93, p. 3097.) This section restated former section 1351 without substantive change. Section 1351, adopted by the 1983 Legislature to handle the administration of estates of missing persons presumed dead, had at that time replaced the original section 280.

the evidence presented by Gerald and Birgit that Michael's disappearance was incapable of satisfactorily being explained.

The court in effect found Gerald and Birgit had not conclusively shown all the prerequisites of section 12401 in order to invoke the presumption. Until they did so, the burden of proof did not shift to the U.S. Attorney. Rather the burden stayed with Gerald and Birgit to prove that the presumption applied.

That Gerald and Birgit had not met their burden of proving all the requirements of section 12401, more specifically that they had not shown the absence of a satisfactory explanation for Michael's disappearance, is fully supported by substantial evidence in the record. The documents submitted by the U.S. Attorney revealed Michael was a convicted drug trafficker who had gone fishing in Orange County on the day of his disappearance in spite of his bail bond requirement that he remain in San Diego County pending his sentencing hearing. Michael was thus a fugitive from justice at the time he disappeared.

The evidence further showed Michael had knowledge before his disappearance he would probably receive a seven-year prison term for his part in a large-scale drug case, and that the U.S. Attorney would seek either a no-bail or a higher bail order pending appeal.

In light of Michael's past criminal record, the facts he had escaped from jail before and had been a fugitive for over two years at that time, and that the bloodstains on his boat could reasonably be explained by a wound requiring stitches he received while fishing in the same boat two weeks before his disappearance, we find there is sufficient substantial evidence to support the probate court's ruling. We decline to substitute our opinion for any inferences made from the evidence by that court. (See *People v. Niccoli,* *supra,* 102 Cal.App.2d at p. 820.) No error is shown.

Gerald's reliance on *Kaufmann v. New York Life Ins. Co.* (1919) 44 Cal.App. 313, 314-315 [186 P. 360] for the proposition a court should not hesitate to find the missing person dead where the applicable time for the presumption of death has expired, even though a motive for the missing person to remain missing may exist, is inapposite in this case. The court there, as compared to the probate court in this case, found that the parties invoking the presumption had met their burden of proof to show the presumption was applicable and controlling in their case.

In light of our conclusion the trial court did not err in denying the petition to declare Michael dead pursuant to section 12401, we need not discuss

Birgit's contention the court erred in failing to set the date of death at December 4, 1983, the day Michael disappeared.

## DISPOSITION

The order appealed from is affirmed.

Work, Acting P. J., and Froehlich, J., concurred.